IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KELLY HOFFMAN, ) | |
| ) | |
|     *Plaintiff*, ) | |
| v. ) | Case No. 1:23-cv-01696 |
| ) | |
| INOVA HEALTH CARE SERVICES, ) | |
| ) | |
| AND ) | |
| ) | |
| NORTH AMERICAN PARTNERS IN ) | |
| ANESTHESIA, LLC, ) | |
| ) | |
|     *Defendants*. ) | |

**MEMORANDUM IN SUPPORT OF NORTH AMERICAN PARTNERS IN ANESTHESIA, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The five-count Complaint (ECF No. 1)[1] filed by Plaintiff Kelly Hoffman ("Plaintiff" or "Hoffman") alleges that Defendants Inova Health Care Services ("Inova") and North American Partners in Anesthesia, LLC[2] ("NAPA") violated Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts I and II), the Virginia Human Rights Act ("VHRA") (Count III), and the Americans with Disabilities Act ("ADA") (Counts IV and V). As an initial matter, NAPA did not violate any of the federal or state laws identified in the Complaint in relation to Plaintiff's former employment. Moreover, all of Plaintiff's alleged claims against NAPA should be dismissed pursuant to Rule

---

[1] Reference to any allegation in the Complaint is solely for purposes of this Motion. In doing so, NAPA does not admit any assertions or allegations stated or implied in the Complaint. To the contrary, NAPA expressly denies Plaintiff's allegations. NAPA further denies that Plaintiff is entitled to any form of damages or relief under any theory whatsoever. In addition, NAPA reserves the right to challenge any of the allegations in the Complaint if this Motion is denied.

[2] Plaintiff incorrectly references "North American Partners in Anesthesia, LLC" in the Complaint. As reflected in Plaintiff's Employment Agreement, she was employed by "American Anesthesiology of Virginia, P.C." This error will be corrected if the matter proceeds beyond this Motion to Dismiss.

12(b)(6) of the Federal Rules of Civil Procedure for failure to state a factually plausible or legally cognizable claim on which relief can be granted.

Plaintiff has not alleged *any* facts to establish that she properly exhausted her administrative remedies, which is an absolute factual prerequisite for suing NAPA for alleged violations under Title VII, the VHRA, or the ADA. Assuming, *arguendo*, that this fatal flaw could be excused, Plaintiff's claims are still ripe for dismissal under Rule 12(b)(6) because the Complaint lacks well-pleaded facts to support the elements required to state a legally viable claim under any theory.

Plaintiff's factual allegations fall short of stating a plausible theory of relief because she has not alleged that she submitted her desired accommodation requests to NAPA. Indeed, she cannot allege that NAPA played any role in reviewing and/or denying her requested accommodations from Inova's COVID-19 vaccination policy. And even if Plaintiff could (and she most certainly cannot for reasons beyond the purview of this Motion), the Complaint does not contain any facts concerning Plaintiff's interactions or dialogue with NAPA about Inova's alleged decision and actions on her desired accommodations. Without these essential facts, the only way to arrive at Plaintiff's desired legal conclusions (*i.e.*, that NAPA violated Title VII, the VHRA, or the ADA based on Inova's decision to deny Plaintiff's requests for a religious and/or disability accommodation), requires building inference upon inference not supported by the facts in the Complaint. As a result, the Court can—and should—dismiss each of Plaintiff's claims without any further inquiry.

Even if Plaintiff had alleged sufficient facts to suggest that NAPA participated in Inova's decision in any way whatsoever (which it did not), stripped of conjecture and conclusory labels couched as fact, the residual facts in the Complaint still do not support the elements otherwise

needed to assert claims against NAPA under any theory. First, Plaintiff's religious discrimination claims under Title VII and the VHRA fail because she has not alleged direct evidence of religious discrimination—*i.e.*, a nexus between the alleged discriminatory attitudes that bear directly on the contested employment decision. In addition, Plaintiff has not alleged a *prima facie* case of religious discrimination because the facts in the Complaint cannot establish that Plaintiff met NAPA's legitimate expectations (*i.e.*, satisfying the requirements to maintain privileges at Inova facilities). The Complaint likewise fails to establish a similarly-situated comparator treated more favorably under substantially similar circumstances.

Second, while Plaintiff's alleged ADA claim in Count V fails for these same reasons, it also fails because Plaintiff has not alleged, and cannot allege, that NAPA regarded Plaintiff as disabled within the meaning of the ADA. On this basis alone, Counts I, II, III, and V of the Complaint should be dismissed pursuant to Fed. R. Civ. 12(b)(6) for failure to state a claim.

Finally, Plaintiff cannot assert a failure to accommodate claim under any theory because the facts in the Complaint do not support that Plaintiff's requested accommodations were reasonable. That is so because the claim depends on the unsupported and unwarranted inference that Plaintiff could not continue her employment with NAPA unless she worked at Inova. Indeed, it is well established that reassigning an employee to a similar role—such as working at a nearby facility without <u>Inova's</u> COVID-19 vaccination requirement—is an acceptable alternative accommodation. Here, Plaintiff has not alleged, and cannot allege, that her employment with NAPA depended exclusively on working at an Inova facility. Furthermore, Plaintiff cannot support that NAPA could grant her desired accommodation(s) without undue business hardship because the Complaint does not establish that NAPA had any influence over or involvement in <u>Inova's</u> decision to grant or deny privileges at Inova facilities to NAPA employees. Consequently,

3

Counts I, II, III, and IV of the Complaint should be dismissed pursuant to Fed. R. Civ. 12(b)(6) for failure to state a claim. Therefore, and for the reasons set forth below, this Court should grant NAPA's Motion to Dismiss and dismiss each of Plaintiff's claims against NAPA.

## I. STATEMENT OF RELEVANT ALLEGED FACTS

Plaintiff, a Certified Registered Nurse Anesthetist ("CRNA"), worked for NAPA, which contracted with Inova—and other facilities—to provide anesthesiology services. (*See* Compl. at ¶¶ 3, 10; Employment Agreement, attached as **Exhibit 1**, at 1, ¶ 2.)[3] To work at Inova's facilities, Plaintiff agreed to perform anesthesiology services in accordance with Inova's policies and guidelines to maintain privileges at its facilities, and subject to Inova's authority to "monitor, regulate, and terminate" Plaintiff's work in its facilities. (*See* Compl. at ¶¶ 11-13; Ex. 1, at 7-8, ¶¶ 14, 15(E).)

---

[3] While a 12(b)(6) motion focuses on the allegations of the complaint, it is well-established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was "integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (Courts may consider documents that (i) are "integral to and explicitly relied on" in the Complaint, and (ii) have not been challenged by Plaintiff as inauthentic."). Indeed, "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint . . . not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiff's claims." *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); *see Papasan v. Allain*, 478 U.S. 265, 268, n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking judicial notice of items in the public record."); *see also Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (observing that a court may consider, on a 12(b)(6) motion, authentic public records not attached to the complaint, without converting it to a motion for summary judgment); *McClarigan v. Riverside Hospital, Inc.*, Case No. 4:21-cv-148, 2022 WL 3588031, at * 4 (E.D. Va. Aug. 22, 2022 (records from this administrative process with the EEOC are integral to a plaintiff's complaint) (citing *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d. 607, 618 n. 3 (E.D. Va. 2011). Here, the Court can and should consider the attached documents because they are authentic, integral to, and/or expressly relied on by Plaintiff in drafting the Complaint.

In the summer of 2021,[4] Inova instituted "its first COVID-19 vaccine policy, requiring all of its employees and contracted workers to be vaccinated against COVID-19" unless granted a religious or medical accommodation exempting them from the vaccination requirement. (Compl. at ¶¶ 15-16; *see also* Plaintiff's EEOC Charge (the "Charge"), attached as **Exhibit 2**.) On or about July 26, 2021, Inova granted Plaintiff's request for a medical accommodation exempting her from its COVID-19 vaccination policy (the "Policy") "until December 21." (Ex. 2; Compl. at ¶ 21.) Sometime later, Inova established "a new Exemption Review Committee" ("Inova's Committee"). (Compl. at ¶ 17.)

In November 2021, Inova informed Plaintiff that she needed to re-apply for an accommodation exempting her from its COVID-19 vaccination policy. (Ex. 2; Compl. at ¶ 18.) Inova also notified all previously "exempted" individuals of the same. (Compl. at ¶ 18.) As a result, on January 1, 2021, Plaintiff submitted a medical accommodation exemption. ("Inova Health System COVID-19 Vaccination Exemption Notification," ECF No. 6-1.)[5] This time, Plaintiff also requested an exemption as a religious accommodation. (*Id.*) On January 6, 2022, Inova's Committee denied Plaintiff's medical accommodation exemption request. (Compl. at ¶ 23.) And, on March 29, 2022, Inova's Committee also denied Plaintiff's religious accommodation exemption request. (*Id.* at ¶ 30.) Notwithstanding, Inova's Committee advised Plaintiff of her right to "submit additional information for consideration . . . ." (*Id.* at ¶ 31.)

---

[4] On July 13, 2022, Plaintiff submitted a Charge of Discrimination ("Charge") (No. 570-2022-01656) to the Fairfax County Office of Human Rights and Equity Programs and the Equal Employment Opportunity Commission ("EEOC"), which alleges that she submitted her accommodation request in May 2021. (*Compare* Charge, attached as **Exhibit 2**, *with* Compl. at ¶¶ 15, 21, *and with* OCR Complaint Documents, attached as **Exhibit 3**, at 1, 14 (indicating that the above-numbered Charge was submitted to the EEOC on April 5, 2022).)

[5] On January 3, 2024, Plaintiff refiled Exhibit 1 to her Complaint because the initial file was inaccessible through ECF due to "file corruption."

On April 10, 2022, Plaintiff alleges that she "submitted a further written statement that provided much further detailed information regarding her religious objections, as well as an individualized letter from her pastor, vouching for her sincerely-held religious beliefs." (Compl. at ¶ 31; ECF No. 1-3.)[6] On May 12, 2022, Plaintiff claims that Inova's Committee "denied" her appeal. (Compl. at ¶ 34; *cf.* Ex. 2 (Plaintiff's Charge does not reference any appeal to Inova's Committee.).) Consequently, "Inova notified [Plaintiff] that she would be suspended from Inova facilities effective May 26, 2022." (Compl. at ¶ 34.) Plaintiff further alleges that Inova sent "a final notice of suspension on July 18, 2022," and her suspension took effect on August 1, 2022. (*Id.* at ¶ 35.) Plaintiff alleges that her employment with NAPA "was a dead letter" as a result. (*Id.* at ¶ 36.) She further alleges, <u>on information and belief</u>, that NAPA "did not consider any accommodation that might be appropriate to allow [her] to maintain her employment with NAPA . . . ." (*Id.* at ¶ 39.) After declining to work at another non-Inova facility proposed by NAPA, Plaintiff's employment with NAPA ended September 29, 2022. (Compl. ¶ 36; Reassignment Documents, attached as **Exhibit 4**.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts that, when accepted as true,[7] "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy the plausibility requirement articulated in *Twombly*, the facts alleged by a plaintiff must be: "more than labels, conclusions, and a formulaic

---

[6] It appears that the referenced information was submitted to the EEOC on April 5, 2022, and to the Attorney General – Office of Civil Rights ("OCR") on April 11, 2022. (Ex. 3, at 1, 14.) Notably, none of the materials submitted include a reference to NAPA. (*See id.*)

[7] "[A]lthough [courts] must accept the truthfulness of all factual allegations, [they] need not assume the veracity of legal conclusions" pleaded as facts. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

recitation of the elements of a cause of action," *id.* at 555 (internal citations omitted); more than a plaintiff's "bare averment that he wants relief and is entitled to it," *id.* at 544, n.3; more than a suggestion of "the mere possibility of misconduct," *id.* at 544; and more than a threadbare recital of conclusory statements consistent with a defendant's liability. *Iqbal*, 556 U.S. at 668 (quoting *Twombly*, 550 U.S. at 570). Instead, a claim has facial plausibility if the supporting facts demonstrate an "actual showing that [a plaintiff] is entitled to relief," thereby creating an inference that the defendant is liable under the law for the alleged misconduct. *Twombly*, 550 U.S. at 556. Ultimately, if the law does not permit recovery, or if a plaintiff does not allege enough facts to "nudge [her] claim[s] across the line from conceivable to plausible, [her] complaint must be dismissed." *Id*. at 570.

### III. ARGUMENT

**A. Plaintiff has not alleged facts to support the administrative exhaustion requirements under Title VII, the ADA, or the VHRA.**

Plaintiff's claims against NAPA should be dismissed with prejudice because she has failed to exhaust her administrative remedies for any of the causes of action identified in her Complaint. An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act. *See* 42 U.S.C. §§ 2000e–5(e)(1). A charge is acceptable only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). After the charge has been filed, the EEOC investigates the alleged unlawful acts and provides notice of the charges to the employer within ten days. 42 U.S.C. § 2000e–5(b). If the EEOC finds reasonable cause to believe the allegations are true, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* An individual cannot bring suit until she has exhausted the administrative process. *See* 42 U.S.C. §

2000e–5(b), (f)(1); *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002); *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022); 29 C.F.R. § 1601.28. Like Title VII, the ADA requires a plaintiff to exhaust administrative remedies prior to bringing suit in court. *See Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (holding ADA incorporates Title VII's enforcement procedures, including the administrative exhaustion requirement).

The VHRA also "prescribes an extensive remedial scheme that employees must follow when relying on the rights and policies articulated in the Act." *See Hice v. Mazzella Lifting Tech., Inc.*, 589 F.Supp.3d 539, 553–55 (E.D. Va. 2022); Va. Code §§ 2.2-3900 *et seq.* To assert an employment discrimination claim under the VHRA, as amended by the Virginia Values Act ("VVA"), a plaintiff must exhaust all administrative remedies under the VHRA before filing a civil action, which requires timely serving a charge against the "respondent" "in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged unlawful discrimination." Va. Code § 2.2-3907(A)-(B). A plaintiff may not commence a civil action unless they are provided a notice of right to sue upon perfection of procedures for filing a complaint "pursuant to § 2.2-3907." Va. Code § 2.2-3008(A).[8]

Here, the only respondent identified in Plaintiff's Charge and in the related administrative charge submitted to OCR is "Inova Health System." (Ex. 2 and 3 at 8.)[9] Moreover, nothing in the

---

[8] Based on the plain language of this statute, receipt of this notice is the critical procedural fact to determine whether a claim is properly before a court. *See Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d. 431, 449-50 (E.D. Va. Nov. 9, 2022) (J., Smith) (quoting *Parikh-Chopra v. Strategic Mgmt. Servs., LLC*, 109 Va. Cir. 155, 157 (Fairfax Cir. Ct. 2021)); *McLaurin v. Liberty University*, 2022 WL 1143534 at *6 n.5 (W.D. Va. April. 18, 2022) (J., Moon) (noting that the VVA "requires plaintiffs" to receive the appropriate notice of the right to file a private cause of action under the VHRA). Indeed, federal exhaustion requirements should not be conflated with the "separate requirement of the VHRA to meet the limited procedures recognized [and applied] under Virginia law." *Jordan*, 640 F. Supp. 3d. at 449 (citations omitted).

[9] Notably, the Fairfax County Office of Human Rights and Equity Programs ("Fairfax OHR") does not have any records of the above-numbered Charge or any other related charge or

administrative charge record references NAPA in any context that could satisfy the administrative exhaustion requirements to bring a claim under Title VII, the ADA, or the VHRA. Even in the light most favorable to Plaintiff, the "Notice of Right to Sue" letter referenced in Paragraph 5 of the Complaint requested from OCR was only requested for Inova (Ex. 3 at 5), and the corresponding notices from the EEOC and OCR confirm the same. (*See* EEOC Notice of Right to Sue and OCR Notice of Right to Sue, Ex. 3 at 2 and 20-21.)[10] Accordingly, Counts I, II, III, IV, and V of the Complaint as alleged against NAPA should all be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has not established the federal or state exhaustion requirements for filing this suit against NAPA.

### B. Assuming, *arguendo*, that Plaintiff has satisfied the administrative exhaustion requirements to sue NAPA, her claims against NAPA should still be dismissed because Plaintiff has not alleged facts that support a plausible claim of relief under any theory.

Although Plaintiff is not charged with pleading facts sufficient to prove her case in order to survive a motion to dismiss, a complaint's factual allegations must nonetheless be enough to raise a right to relief above the speculative level. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002); *see also Twombly*, 550 U.S. at 555)); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted). In other

---

complaint against any responding party. (Fairfax OHR Response to Document Request, attached as **Exhibit 5**.)

[10] Counsel for NAPA is awaiting the EEOC's response to its request for the administrative record related to Plaintiff's Charge and will address any developments in its Reply brief or during the hearing on this Motion.

words, the Supreme Court's holding in *Swierkiewicz* "left untouched the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (internal quotation marks omitted); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz* ... did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim.").

As demonstrated below, Plaintiff has not alleged facts that support a plausible claim of relief against NAPA under Title VII, the VHRA, or the ADA. For ease of reference, Plaintiff's disparate treatment claims are addressed first, followed by her failure to accommodate claims.

> **1. Plaintiff's disparate treatment claims alleged against NAPA should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the Complaint does not contain facts to support that Plaintiff was treated less favorably than similarly situated employees based on her religion or unidentified disability.**

Disparate treatment claims "present the most easily understood type of discrimination, and occur where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal citations and quotations omitted.). To establish a *prima facie* case of disparate treatment under Title VII, the ADA or the VHRA,[11] Plaintiff must allege facts that support: (1) she was a member of a protected class; (2) she experienced an adverse employment action; (3) at the time of the adverse action, she met NAPA's legitimate expectations; and (4) similarly-situated employees were treated more

---

[11] Because she did not alleged direct evidence of discrimination or retaliation, Plaintiff's claims depend on establishing a *prima facie* case under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (U.S. 1973). *See Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018) ("Title VII requires a plaintiff to produce evidence of a stated purpose to discriminate and a nexus between that evidence and [the contested adverse action]."); *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal quotations omitted) (direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision").

favorably under similar circumstances. *See White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2014); *Terrill v. Chao*, 31 F. App'x 99, 100 (4th Cir. 2002); *see also See Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (applying *McDonnell Douglas* standard to ADA claims); *Sunkins v. Hampton Roads Connector Partners*, __ F.Supp.3d __, 2023 WL 7411761, at *6 (E.D. Va. 2023) (applying *McDonnell Douglas* standard to VHRA claims).

With regard to the fourth element, while courts do not require a plaintiff to establish a similarly-situated comparator to succeed on all types of discrimination claims, *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F. 3d 536, 545 (4th Cir. 2003), when a plaintiff's allegations—as is the case here—are based "completely upon a comparison to an employee from a non-protected class . . . the validity of [the plaintiff's] *prima facie* case depends upon whether that comparator is indeed similarly situated." *Thomas v. City of Annapolis*, 851 F. App'x 341, 347 (4th Cir. 2021) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (explaining that a plaintiff needs to support that she and a comparator "were subject to the same standards and *engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal citations and quotations omitted); *see also Cook v. Prince George Cty. Sch. Bd.*, No. 3:22-cv-129, 2023 WL 2250479, at *8 (E.D. Va. Feb. 27, 2023) (J., Hudson) (internal citations and quotations omitted) (emphasis in original) (explaining that a plaintiff must also support that she was treated more favorably than she was "*with respect to the adverse action complained of*").

As an initial matter, Plaintiff's disparate treatment claim under the ADA (Count V) fails because she has not alleged facts to establish protected status under the ADA. *Reynolds*, 701 F.3d at 150 (citing 42 U.S.C. § 121202(2) (internal quotations omitted) (explaining that a plaintiff must identify a physical or mental impairment that substantially limits one or more major life activities,

11

a record of such an impairment, or being regarded as having such an impairment). Setting aside whether Plaintiff can support having a qualifying disability under the ADA, nothing on the face of the Complaint supports that NAPA knew or regarded Plaintiff as disabled. To be sure, Plaintiff's accommodation requests were submitted to Inova, and Plaintiff has not alleged that she or Inova shared the forms or discussed their contents with NAPA. For this reason alone, Count V should be dismissed because Plaintiff cannot support the first element needed to establish a *prima facie* case of disability discrimination. In addition, under any theory, Plaintiff's disparate treatment claims fail because she has not alleged facts to support the third or fourth elements.

   i. <u>The Complaint does not contain facts to support that Plaintiff met NAPA legitimate expectations.</u>

Plaintiff has not alleged facts to support that she could not continue her employment with NAPA unless she worked at an Inova facility. Nevertheless, because Plaintiff was not working at a NAPA facility, (Compl. at ¶¶ 11-12), the terms of her employment required her to follow the policies and guidelines to maintain privileges at facilities that NAPA had service contracts with—here, Inova. (*See* Compl. at ¶¶ 3, 10; Ex. 1, at 3-4, ¶ 7(A)(iv), (ix), 7-8, ¶¶ 14, 15(E).) Moreover, and because Plaintiff only worked at Inova (and refused to work at other facilities that NAPA serviced), she cannot support that she met NAPA's legitimate expectation to provide services "in accordance with the policies and guidelines" **established by Inova** to maintain privileges at Inova's facilities. (*See* Compl. at ¶¶ 12-13; *see also* Ex. 4 at 2 (reflecting that Plaintiff requested NAPA to "discard [her] preapplication" to an alternative facility offered by NAPA).) Accordingly, even in the light most favorable to Plaintiff, her allegations do not—and cannot—support that she met NAPA's expectations for continued employment. For this reason alone, Counts II, III, and V should be dismissed.

12

ii. <u>The Complaint does not contain facts to support that NAPA treated Plaintiff less favorably than other NAPA employees</u>.

It is clear from the Complaint that <u>Inova's</u> COVID-19 vaccination policy required all of <u>Inova's</u> "employees and contracted workers" to be vaccinated against COVID-19 unless they qualified for an exemption. (Compl. at ¶ 15.) As an initial matter, Plaintiff has not alleged (and cannot allege) that NAPA was involved in the implementation of <u>Inova's</u> policy. This alone precludes Plaintiff from showing that NAPA treated one of its employees who provided services at Inova's facilities more favorably than her based on religion or an alleged disability because they would all be required to follow <u>Inova's</u> policies and guidelines to maintain privileges at an Inova facility. Moreover, Plaintiff has not alleged that NAPA was involved in the enforcement of <u>Inova's</u> vaccination requirement, or that NAPA had any influence on the Inova Committee's exemption decisions. As a result, although Plaintiff has not identified another **NAPA** employee who received more favorable consideration from Inova's Committee (which is fatal in itself), this would not constitute disparate treatment *by* NAPA if it occurred. Ultimately, the Complaint provides no factual enhancement to support that NAPA treated a similarly situated employee more favorably than Plaintiff based on her alleged religious beliefs or a disability. Accordingly, these factual inadequacies also warrant dismissal of Counts II, III, and V pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a factually plausible or legally cognizable disparate treatment claim against NAPA under Title VII, the VHRA, or the ADA.

**2. Plaintiff's failure to accommodate claims alleged against NAPA should be dismissed pursuant to Fed. R. Civ. P 12(b)(6) because the Complaint does not contain facts to support the elements required to assert a claim under Title VII, the VHRA, or the ADA.**

i. <u>Plaintiff cannot support a failure to accommodate claim based on her alleged religion because working at Inova facilities was not a job requirement for continued employment with NAPA.</u>

13

Employers are required to "make reasonable accommodation[s] for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (internal citations omitted); *see supra Sunkins*, 2023 WL 7411761, at *6 (evaluating VHRA claims under Title VII principles). To establish a failure to accommodate claim under Title VII or the VHRA, Plaintiff must allege facts to support (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting requirement. *U.S. EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017). The facts alleged in the Complaint do not support any of these elements.

Here, Plaintiff has not alleged facts to support that she could not continue her employment with NAPA unless she worked at an Inova facility. As a result, she cannot support that Inova's COVID-19 mandate was a requirement of her employment with NAPA. This alone justifies dismissal of Counts I and III of the Complaint as alleged against NAPA. Furthermore, as discussed in the preceding sections of this brief, Plaintiff's factual allegations fail to identify any involvement by NAPA (rather than Inova) in her requests for accommodations or the decision to deny them. There is no mention of NAPA in the twenty (20) paragraphs addressing Plaintiff's request for accommodation and Inova's alleged denial of the same. (*See* Compl. at ¶¶ 15-35.) Accordingly, Plaintiff's Complaint fails to set forth factual allegations establishing any of the elements required to state a failure to accommodate claim under Title VII or the VHRA.

    ii.  Plaintiff cannot support a failure to accommodate claim under the ADA.

To support a failure to accommodate claim under the ADA, Plaintiff must support that she: (1) was an individual who had a disability within the meaning of the statute; (2) that NAPA had notice of her disability; (3) with or without a reasonable accommodation she could perform the

essential functions of the position; and (4) NAPA refused to make such accommodation(s). *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). The Complaint does not contain any facts to support that Plaintiff was an individual with a disability within the meaning of the ADA, nor any facts to support that NAPA had notice of her disability. More specifically, Plaintiff's allegations claim a "contraindication" to the COVID-19 vaccines, but she does not claim that the condition was—or is currently—affecting her ability to perform major life activities. *Reynolds*, 701 F.3d at 150 (citing 42 U.S.C. § 121202(2) (internal quotations omitted) (explaining that a plaintiff must identify a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment). Assuming, *arguendo*, that this factual deficiency is not fatal in itself, Plaintiff's claim fails because she cannot support that NAPA denied her a reasonable accommodation.

As an initial matter, Plaintiff has not alleged that she requested an accommodation *from* NAPA. Instead, Plaintiff submitted her requests to Inova's Committee. Even if Plaintiff's requests reached NAPA—and there are no facts in the Complaint to support that they did—Plaintiff has not alleged, and cannot allege, it was even possible for NAPA to grant her desired accommodation to be exempted from Inova's vaccination requirement. Moreover, the Complaint makes clear that Inova's Committee determined whether to grant its "employees and contracted workers" exemptions from its COVID-19 vaccine mandate. (Compl. at ¶¶ 15, 17.) This alone precludes Plaintiff from demonstrating that NAPA refused to grant her a *reasonable* accommodation.

Furthermore, Plaintiff's Complaint and the authentic documents that are integral to her allegations demonstrate that she refused alternative reasonable accommodations offered by NAPA. Indeed, "[t]he ADA does not provide an all-inclusive definition of the term 'reasonable accommodation. Instead, it provides examples of what a "reasonable accommodation' *may*

15

include," like "job restructuring, part-time or modified work schedules, reassignment to a vacant position and other similar accommodations." *Tartaro-McGowan v. Inova Home Health, LLC*, __ F.4th __, No. 22-1825, 2024 WL 174357, at *6 (4th Cir. Jan. 17, 2024) (internal quotations omitted) (citing 42 U.S.C. § 12111(9)(B)). For this reason alone, employers are not "required to 'provid[e] the exact accommodation that the employee requested.'" *Id.* (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015)). "And as long as the employer's chosen accommodation is reasonable, even if not perfect, our inquiry is at an end—'not even a well-intentioned court may substitute its own judgment for the employer's choice.'" *Id.*

In this case, Plaintiff cannot support a failure to accommodate claim simply by pleading, <u>on information and belief</u>, that NAPA did not "not consider any accommodation" simply because it could not grant her desired accommodation. (*Cf.* Compl. at ¶ 39.) The communications between NAPA and Plaintiff demonstrate that NAPA offered Plaintiff the option of multiple facilities that did not require vaccination to seek the credentialing required to continue her employment. (*See* Ex. 3 at 1.) However, Plaintiff requested that NAPA "discard [her] preapplication" to one of those facilities because she did not believe she would be credentialed in time to accept the alternative position offered. (*See id*. at 2.) Contrary to Plaintiff's allegation that "neither Inova nor NAPA **ever considered** any accommodation that might be appropriate to allow [Plaintiff] to maintain her employment with NAPA and Inova," the documents that are integral to the Complaint demonstrate that NAPA did, in fact, contemplate and offer Plaintiff alternative accommodations that she failed to pursue. (*See* Compl. at ¶ 39.) Because Plaintiff cannot plausibly allege that she was not offered an alternative reasonable accommodation by NAPA, Count IV of the Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a plausible and legally cognizable failure to accommodate claim against NAPA under the ADA.

## IV. CONCLUSION

Wherefore, and for the foregoing reasons, North American Partners in Anesthesia, LLC Company respectfully request this Court to enter an Order granting its Motion to Dismiss and awarding any additional relief deemed appropriate.

Dated: *January 26, 2024*

                                        Respectfully submitted,
                                        NORTH AMERICAN
                                        PARTNERS IN ANESTHESIA, LLC

                                          /s/ *Scott A. Siegner*
                                        Scott A. Siegner (VSB No. 89570)
                                        scott.siegner@ogleetreedeakins.com
                                        W. Ryan Waddell (VSB No. 91148)
                                        ryan.waddell@ogletreedeakins.com
                                        OGLETREE, DEAKINS, NASH, SMOAK
                                        & STEWART, P.C.
                                        901 East Byrd Street, Suite 1300
                                        Richmond, VA 23219
                                        Tel.:  (804) 663-2342
                                        Fax:  (804) 225-8641

                                        *Counsel for Defendant NAPA*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2024, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff:

Timothy Paul Bosson (VSB No. 72746)
Isaiah Kalinowski (VSB No. 71125)
BOSSON LEGAL GROUP PC
823 South King Street
Suite Unit C
Leesburg, VA 20175
571-438-9513
Fax: 202-380-0486
Email: tbosson@bossonlaw.com
Email: ikalinowski@bossonlaw.com
*Counsel for Plaintiff*


            /s/ *Scott A. Siegner*
Scott A. Siegner (VSB No. 89570)
scott.siegner@ogleetreedeakins.com
W. Ryan Waddell (VSB No. 91148)
ryan.waddell@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
901 East Byrd Street, Suite 1300
Richmond, VA 23219
Tel.:  (804) 663-2342
Fax:  (804) 225-8641

*Counsel for Defendant NAPA*