**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **KELLY HOFFMAN,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:23-cv-01696-MSN-IDD** |
| **INOVA HEALTH CARE SERVICES and NORTH AMERICAN PARTNERS IN ANESTHESIA, LLC,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF INOVA'S MOTION TO DISMISS**

**I.    INTRODUCTION & SUMMARY OF ARGUMENT**

"Vaccination requirements are a common feature of the provision of healthcare in America: Healthcare workers around the country are ordinarily required to be vaccinated for diseases such as hepatitis B, influenza, and measles, mumps, and rubella." *Biden v. Missouri*, 142 S. Ct. 647, 653 (2022). In July 2021, amidst the COVID-19 pandemic, Inova required its "team members," including assigned contract workers like Kelly Hoffman ("Plaintiff" or "Ms. Hoffman"), to be vaccinated against COVID-19 unless they requested and were approved for medical or religious exemptions.  In November 2021, in response to a mandate from the U.S. Centers for Medicare and Medicaid Services (the "CMS Mandate") requiring covered medical care providers and those who interact with them to be vaccinated, and to improve upon its existing internal processes, Inova updated its COVID-19 vaccination policy. Team members seeking medical or religious exemptions were directed to apply under the updated standard.

Ms. Hoffman was employed by and worked for North American Partners in Anesthesia ("NAPA") as a Certified Registered Nurse Anesthetist ("CRNA"). Ms. Hoffman was credentialed

as an Advanced Practice Provider ("APP") at Inova Loudoun Hospital so that she could provide CRNA services in the hospital and NAPA assigned Ms. Hoffman to work at Inova's Loudoun Hospital and Inova's Loudoun Ambulatory Surgery Center. As a credentialed health care provider, Ms. Hoffman was subject to the Inova Loudoun Hospital Medical Staff Bylaws and the CMS Mandate.

Ms. Hoffman submitted both medical and religious exemption requests seeking to be excused from the COVID-19 vaccine requirement. Inova denied Ms. Hoffman's medical exemption request, which did not meet the CMS direction on medical contraindications to the vaccine. She did not appeal this decision. Inova also denied Ms. Hoffman's religious exemption request, but she sought an appeal of that decision and submitted additional information in support of her request, ultimately without success. After those appeals were exhausted, consistent with the Medical Staff Bylaws, Inova administratively suspended Ms. Hoffman's clinical privileges on August 1, 2022. Approximately two months later, NAPA separated her from its employment. She has now filed this suit, asserting a variety of federal and state claims for employment discrimination on the basis of disability and religion against Inova and NAPA.

Ms. Hoffman's Complaint fails to state any plausible claim for relief against Inova. As an initial matter, Ms. Hoffman has failed to adequately plead that the federal and state employment statutes on which she relies protect her against adverse employment action by Inova, which never employed her. Moreover, Ms. Hoffman failed to exhaust her administrative remedies in several ways, including by filing a timely charge of discrimination challenging any of Inova's conduct after May 2022, which means she failed to pursue administrative relief for the conduct of which she complains now.

Ms. Hoffman's claims also lack substantive merit. Her religious failure to accommodate

claim (Count I) cannot survive, because facts on which she relies to support her claim show no conflict between her alleged religious beliefs and the COVID-19 vaccine requirement. Counts II and III are substantively duplicative of Count I, in that they contest Inova's decision not to accommodate her religious exemption, but cannot move forward as disparate treatment claims because Ms. Hoffman has advanced no facts that might demonstrate Inova treated her differently than others because of her religion. Turning to her disability discrimination claims, Ms. Hoffman admits that her CRNA role was subject to the CMS Mandate, and that medical exemptions to the CMS COVID-19 vaccine requirement were circumscribed by federal law, but fails to allege that her medical condition entitled her to an exemption under that standard.  This failure vitiates her disability failure to accommodate claim (Count IV).  Her disability discrimination claims (Counts V and VI) also fail as she cannot show that in any case she was treated differently from any other similarly situated credentialed practitioner because of her disability. For the reasons set forth in detail below, the Complaint should be dismissed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Kelly Hoffman was "directly employed by NAPA at all relevant times herein." Compl. ¶ 10.  Ms. Hoffman worked at Inova Loudoun Hospital and Inova's Ambulatory Surgery Center for NAPA. *Id*. ¶ 11. "In July 2021, Inova instituted its first Covid-19 vaccine policy".  *Id.* ¶ 15 & n.1; *see* **Exhibit 1**: IHS Mandatory Immunization Policy for Medical Staff ("Medical Staff Policy").[2]

---

[1] Inova does not concede the accuracy of Plaintiff's allegations. However, for purposes of this Motion only, Inova "'accept[s] as true all of the factual allegations contained in the complaint', and 'draw[s] all reasonable inferences in favor the plaintiff[s].'" *Kensington Volunteer Fire Dept. v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted).

[2] The Court may "consider documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 166 (4th Cir. 2016). Documents not attached or expressly incorporated in a complaint but submitted by the movant can also be considered "so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id*. Here, because the IHS Mandatory Immunization Policy for Medical Staff is explicitly incorporated into the Complaint by

The Medical Staff Policy required all members of Inova's Medical Staff and credentialed APPs to document that they had received certain vaccinations, including a COVID-19 vaccine. *See* Exhibit 1. Medical Staff members and APPs could, however, apply for an exemption from this requirement. *See* Compl. ¶ 16; *see also* Exhibit 1 at pp. 5-7 (describing exemption request process), and Ms. Hoffman submitted a request for a medical exemption, citing various medical and non-medical concerns, but primarily based on "recurring episodes of syncope" as well as a "family history [of] dementia, reactions to vaccines with family members who have autism and OCD after getting vaccines." **Exhibit 2**, July 2021 Exemption Request. Consistent with its policy at that time of "basically grant[ing] exemptions, within a few days, to anyone who requested it," Inova approved Ms. Hoffman's medical exemption request. Compl. ¶¶ 16, 21.

On or about November 5, 2021, the CMS Mandate was published. 86 Fed. Reg. 61555 (Nov. 5, 2021); *see also Biden v. Missouri*, 142 S. Ct. 647, 650 (2022) (holding CMS Mandate valid and enforceable).[3] Finding that vaccination of healthcare workers against COVID-19 is "necessary for the health and safety of individuals to whom care and services are furnished[,]" and that staff who are unvaccinated "pose a serious threat to the health and safety of patients," CMS required participating facilities to ensure that their health care staff received a COVID-19 vaccine as a condition of receiving Medicare or Medicaid payments. 86 Fed. Reg. at 61559, 61570. The

---

reference, the Court may consider it without converting Inova's motion into a motion for summary judgment.

[3] The Court can take judicial notice of the requirements of the CMS Mandate at the Motion to Dismiss stage because "courts may consider 'official public records, documents central to the plaintiff[s'] claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.'" *E. Coast Repair & Fabrication, LLC v. United States through Dep't of the Navy*, 492 F. Supp. 3d 625, 631 (E.D. Va. 2020) (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006)). The CMS Mandate, published in the Federal Register, is an official public record and both referenced in and central to the Complaint that the Court can properly consider it.

CMS Mandate also directed covered employers like Inova to develop a process that documented vaccine exemption requests and implemented a review process for evaluating whether exemptions were appropriate under federal law. *Id.*; *see also Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132 (MSN/LRV), __ F. Supp. 3d ___, 2023 WL 6038016, at *1 (E.D. Va. Sept. 14, 2023) ("Inova was [] required [by the CMS Mandate] to update its policy, meaning that previously granted exemption requests needed to be re-evaluated."). This meant "[r]equests for exemptions based on an applicable Federal law must be documented and evaluated in accordance with applicable Federal law and each facility's policies and procedures[,]" and that the mandate "preempts the applicability of any State or local law providing for exemptions to the extent such law provides broader exemptions than provided for by Federal law[.]" 86 Fed. Reg. at 61570. "The guidance for healthcare providers from [CMS] and the Center[s] for Disease Control (CDC) provided the basis for medical exemptions to vaccinations where recognized medical conditions medically contraindicate vaccination with the Covid vaccines." Compl. at ¶ 24.

Following the issuance of the CMS Mandate, Inova notified all team members – including Ms. Hoffman – that they would need to re-apply for an exemption if they wished to avoid vaccination. Compl. ¶¶ 18, 22. Ms. Hoffman filed both a medical and a religious exemption request on January 3, 2022. *Id*. ¶ 22. **Exhibit 3**, January 2022 Exemption Requests.[4]  In her submission, Ms. Hoffman objected to Inova's forms, to its exemption review process, and to the relative benefits of the vaccine, but from a medical perspective also included information from a healthcare provider stating that Ms. Hoffman "has suffered from dysautonomia that was triggered by

---

[4] Ms. Hoffman attempted to attach this submission as Exhibit 1 to her Complaint. However, the PACER document, twice uploaded by Ms. Hoffman's attorneys as of the time of this writing, is corrupted and cannot be reviewed. For convenience, Inova is submitting this request as an exhibit to its Motion and will cite to that copy herein.

vaccination … [t]he impairment results in recurrent episodes of loss of consciousness and cardiovascular dysregulation … Her condition is known to be triggered by vaccinations[.]" *Id*. Inova denied her medical exemption request on January 6, 2022. Compl. ¶ 23.

Ms. Hoffman's religious exemption request stated that "[c]omplying with the vaccination requirement would be a violation of God's Will, which is a grave sin." *Id*. at p. 6. Ms. Hoffman also submitted a "religious exemption letter" expanding on her beliefs. *See id.* at p. 9. In her letter, Ms. Hoffman stated "I am responsible to God for my body – how I treat it, how I use it, how I take care of it, and what I put into it. My body is considered a 'sacred temple' that is devoted to God for sacred purposes … It would be dishonoring God for me to put something into my body for which I had a conscientious objection." *Id*. Ms. Hoffman explained "I strive to use only medicines and products that are acceptable to God." *Id*. at p. 6; Compl. ¶ 28. Inova denied Ms. Hoffman's religious exemption request on March 29, 2022. Compl. ¶ 30.

Although it denied her initial exemption requests, in each case Inova "offered Mrs. Hoffman the right to 'submit additional information for consideration'" and on April 10, 2022, she submitted a packet of additional information in support of her religious exemption request. *Id*. ¶ 31, ECF No. 1-3. In a lengthy submission that included a discussion of the legality of the vaccine mandate, the efficacy of the vaccine, and the threat posed by infection, Ms. Hoffman reiterated her belief "my body and my life are sacred … I sincerely believe that my life is not my own, but it belongs to God, and it is He who gives me the life within me … I concede all things both large and small to the will of God … God gives us the gift of conscience …." *Id*. at p. 3. *See also* Compl. ¶ 31. For the first time she added that she objected to the COVID-19 vaccines "utilizing aborted human fetal cell lines in the development or testing of these vaccines." *Id*. at p. 5. *See also* Compl.

6

¶ 33. Ms. Hoffman also submitted a letter from a pastor supporting her "conviction" against the COVID-19 vaccines which "is rooted in conscience." *Id*. at p. 14.

Inova considered this new submission with the original information she had submitted. On May 12, 2022, Inova again denied Ms. Hoffman's exemption request. Compl. ¶ 34. Ms. Hoffman sought to have Inova reconsider, but on July 18, 2022, Ms. Hoffman's exemption request was again denied. **Exhibit 4**, July 2022 Email Exchange. On July 25, 2022, Ms. Hoffman was notified by Inova Loudoun Hospital's ("ILH") Medical Staff Office that her clinical privileges would be administratively suspended for failure to satisfy administrative requirements, consistent with the ILH Medical Staff Bylaws, but that she could be reinstated at any time within six months if she complied with the COVID-19 vaccine policy. **Exhibit 5**, Medical Staff Email Exchange.

Ms. Hoffman's clinical privileges at ILH were suspended on August 1, 2022. Compl. ¶ 35. NAPA subsequently separated Ms. Hoffman from its employment on September 29, 2022. *Id*. at ¶ 36. This Complaint followed.

## III.    STANDARD OF REVIEW

"To survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, facts alleged in the complaint are to be construed in the light most favorable to the Plaintiff. *See, e.g.*, *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021). Still, a plaintiff must allege "'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court need not accept the truth of "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," or "that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Legal conclusions are also not entitled to the deference that factual allegations enjoy at the motion to dismiss stage. *Iqbal* at 678. If the allegations give rise to an "obvious alternative explanation," *Id.* at 682, then the complaint may "stop[] short of the line between possibility and plausibility of 'entitle[ment] to relief,'" *Twombly,* 550 U.S. at 557. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. If the complaint does not state a plausible claim for relief, the Court should dismiss the claim. *Twombly*, 550 U.S. at 570.

## IV.   ARGUMENT

### A.  Ms. Hoffman's Employment Discrimination Claims Fail as She Concedes Inova Was Not Her Employer (Counts I-VI)

Ms. Hoffman "was directly employed by NAPA at all relevant times herein." Compl. ¶ 10. "NAPA contracted with Inova to provide anesthesiology service at Inova facilities." *Id*. ¶ 3. And, "[u]ltimately, NAPA terminated Ms. Hoffman's employment," roughly two months after her assignment with Inova ended. *Id*. ¶ 36. Yet she has brought this action pursuant to provisions of Title VII, the ADA, and the VHRA that prohibit discrimination in employment. 42 U.S.C. § 2000e(b); 42 U.S.C. §§ 12111(2), (4); and Va. Code § 2.2-3905 (mirroring definition of "employer" used in Title VII and the ADA). *See Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 396 (4th Cir. 2021) ("[a]s the text makes clear, the protections of Title VII's anti-discrimination and anti-retaliation provisions extend only to employees"); *Harris v. Burnette*, Case No. 3:16-cv-490, 2017 U.S. Dist. LEXIS 9141, at *8 (E.D. Va. Jan. 23, 2017) ("the ADA imposes liability only for the discriminatory employment decisions made by an 'employer' … against an employee"). Ms.

8

Hoffman attempts to address this lack by alleging that Inova is susceptible to employment discrimination claims as her "joint employer." *Id*. ¶ 12. That allegation is, however, unsupported by factual allegations sufficient, if true, to allow this Court to hold Inova responsible for any harms as an employer.

In the Fourth Circuit, courts consider nine factors in evaluating whether an individual was jointly employed by multiple entities, although "none of these factors are dispositive" and the "common-law element of control remains the 'principal guidepost' in the analysis." *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 414 (2015). *Id*. The nine factors are:

(1)     authority to hire and fire the individual;
(2)     day-to-day supervision of the individual, including employee discipline;
(3)     whether the putative employer furnishes the equipment used and the place to work;
(4)     possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
(5)     the length of time during which the individual has worked for the putative employer;
(6)     whether the putative employer provides the individual with formal or informal training;
(7)     whether the individual's duties are akin to a regular employee's duties;
(8)     whether the individual is assigned solely to the putative employer; and
(9)     whether the individual and putative employer intended to enter into an employment relationship.

*Id*. The first three factors are generally the most important to the court's analysis. *See Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021).

A review of the allegations set out in the Complaint reveals Ms. Hoffman's allegations regarding the putative joint employment relationship are largely couched as legal conclusions:

- "Mrs. Hoffman was directly employed by NAPA at all relevant times herein." Compl. ¶ 10.

- "Although employed by NAPA, Mrs. Hoffman worked exclusively in Inova facilities … both in Inova's Loudoun Hospital and the Ambulatory Surgery Center." *Id*. ¶ 11.

- "Mrs. Hoffman … performed anesthesiology services at the direction of Inova, with the authorization of NAPA. Mrs. Hoffman was at all relevant times under the direction and control of Inova as a joint employer, though she was technically employed by NAPA." *Id*. ¶ 12.

- "Specifically, Inova exercised authority over assigning and supervising the work Mrs. Hoffman performed, and retained the right to schedule, monitor, regulate, and terminate Mrs. Hoffman's employment at Inova. Moreover, Mrs. Hoffman worked solely for Inova facilities, and the company provided Mrs. Hoffman her work location and the majority of the equipment needed to do her work." *Id*. ¶ 13.

Many of these allegations are simply unsupported.  More is needed. To survive a motion to dismiss, the "[f]actual allegations [of a complaint] must be enough to raise a right to relief above the speculative level." *Twombly* at 555.

Looking at the *Butler* factors, Ms. Hoffman has not alleged that Inova directed, encouraged, or otherwise influenced NAPA to terminate her, or even had the authority to do so.  She admits that Inova administratively suspended her Medical Staff credentials only.  She also states that NAPA decided to separate her from its employment, notably nearly two months later, (Compl. ¶¶ 35-36), but does not explicitly allege NAPA did so because of her loss of credentials at Inova. In fact, Ms. Hoffman repeatedly pleads that NAPA was her employer and NAPA was the one to end their employment relationship. *Id*. ¶ 10 ("Mrs. Hoffman was directly employed by NAPA at all relevant times herein."); ¶ 12 ("she was technically employed by NAPA"); ¶ 36 ("NAPA terminated Mrs. Hoffman's employment on September 29, 2022").

Similarly, Ms. Hoffman alleges "Inova exercised authority over assigning and supervising the work Mrs. Hoffman performed….", (Compl. ¶ 13), without a single fact to support this assertion. For example, the Complaint is silent as to who at Inova allegedly assigned her work or supervised her work, or who at Inova controlled how or when Ms. Hoffman chose to treat patients. *See generally* Compl. *Contrast Greene v. Harris Corp.*, 653 Fed. Appx. 160, 169-70 (4th Cir.

2016) (defendant had assigned an on-site supervisor to the plaintiff and controlled the day-to-day supervision of plaintiff, including where and how the work would take place).

Turning to the third *Butler* factor – furnishing the place of employment – Ms. Hoffman claims only that NAPA assigned her to work at two Inova facilities during the relevant period. She does not say whether Inova directed her to work there or if NAPA assigned her to those locations in their sole discretion. Absent context, the fact that she worked at an Inova facility lacks legal significance. To the extent Inova provided the "majority of the equipment needed to do her work," (Compl. ¶ 13), the Fourth Circuit has recognized that the use of hospital equipment and supplies is standard practice "in almost every case" and therefore not particularly probative of the hospital's control of the worker. *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 262 (4th Cir. 1997). The additional factors cited in *Butler* are not addressed at all in the Complaint. *Id.* at 414.

Ms. Hoffman's Complaint against Inova should be dismissed because she has not pled facts sufficient to state a plausible claim that Inova employed her within the meaning of the employment discrimination laws pursuant to which she seeks relief.

## B. Ms. Hoffman Failed to Exhaust Her Administrative Remedies Under Title VII (Counts I and II), the ADA (Counts IV and V), and the VHRA (Counts III and VI)

Timely filing a charge of discrimination detailing the alleged violation is a prerequisite to maintaining a claim against a (putative) employer under each of the employment laws Ms. Hoffman claims Inova violated. In order to exhaust one's administrative remedies "[a]s a precondition to the commencement of a Title VII action in court," a plaintiff "must first file a charge with the [EEOC]." *Fort Bend Cty. v. Davis,* 139 S. Ct. 1843, 1846 (2019) (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)). The same is true under the ADA, which incorporates Title VII's administrative exhaustion requirements. *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012). Yet Ms. Hoffman failed to notify either the federal or state authorities charged with

investigating alleged discrimination that she was subjected to any discrimination while assigned to Inova after May 2022, which includes the administrative suspension of her clinical privileges and alleged wrongful termination.  Moreover, her state disability discrimination claim was filed too late to be viable. Absent timely application for relief from the federal and state agencies created to investigate her claims, her claims cannot be resolved in this Court.

### 1.  Ms. Hoffman Failed to Exhaust Administrative Remedies Relating to the Suspension of her Clinical Privileges and Alleged Wrongful Termination (Counts I-VI)

"[A] plaintiff is required to exhaust administrative remedies with respect to each 'discrete act' of alleged discrimination." *Staley v. Gruenberg*, Case No. 1:12-cv-530 (GBL/JFA), 2013 WL 12096490, at *8 (E.D. Va. May 10, 2013). Consistent with this exhaustion requirement, "[a] claim will [] typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the [lawsuit] encompasses another type—such as discrimination in pay and benefits." *Chacko v. Pautuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005). In other words, "when the claims in [a plaintiff's] complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019); *see also Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) ("'Factual allegations made in formal litigation must correspond to those set forth in the administrative charge.'") (quoting *Chacko*, 429 F.3d at 509).

The EEOC cautions individuals of these requirements, advising:

Also, if more than one discriminatory event took place, the deadline usually applies to each event. For example, let's say you were demoted and then fired a year later. You believe the employer based its decision to demote and fire you on your race, and you file a charge the day after your discharge. In this case, only your claim of discriminatory discharge is timely. In other words, you must have filed a charge challenging the demotion within 180/300 days from the day you were demoted. If you didn't, we would only investigate your discharge."

EEOC, "Time Limits on Filing a Charge," https://www.eeoc.gov/time-limits-filing-charge, accessed Jan. 21, 2024.

A failure to provide an accommodation under Title VII and the ADA "'constitutes a discrete act rather than an ongoing omission.'" *Gill v. TBG Food Acquisition Corp.*, Civil Action No. 7:19CV00479, 2020 WL 3869569, at *5 (W.D. Va. July 9, 2020) (quoting *Hill v. Hampstead Lester Morton Court Partners LP*, 581 F. App'x 178, 181 (4th Cir. 2014)); *see also Sacks v. Bd. of Educ. of Balt. Cty.*, Civil Action No. RDB-21-968, 2021 WL 5233752, at *4 (D. Md. Nov. 9, 2021) ("'[F]ailure to accommodate' claims are claims that the Supreme Court explicitly found to be based on 'easy to identify' discrete acts.") (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002)).  Ms. Hoffman's Charge of Discrimination, which was filed in July 2022, alleged only that Inova failed to accommodate her medical and religious beliefs from November 26, 2021 through May 26, 2022. **Exhibit 6**, Charge of Discrimination.  Even accepting that a discrete failure to accommodate occurred on May 26, 2022, that was the last such discriminatory act alleged in the Charge, and occurred months before Inova suspended Ms. Hoffman's clinical privileges, which in turn occurred months before NAPA ended their employment relationship.

Termination is a distinct type of discrete act that has to be raised and investigated before the administrative agency.  *See Morgan*, 536 U.S. at 114 ("[T]ermination is a "discrete act[]  . . . of discrimination" that "constitutes a *separate* actionable 'unlawful employment practice[.]'") (emphasis added); *Chacko*, 429 F.3d at 509; *Walton*, 33 F.4th at 174 (citing *Morgan* and *Chacko*). Because Ms. Hoffman never filed a Charge alleging she had been subjected to a discriminatory termination, her Title VII, ADA, and VHRA claims not covered by her pre-May 2022 failure to accommodate allegations should be dismissed. *See Parker*, 915 F.3d at 306 (affirming dismissal of Title VII discriminatory termination claim for failure of exhaustion); *Marge v. N.C. Detective*

*Agency*, No. 5:18-CV-592-FL, 2019 WL 2078773, at *3 (E.D.N.C. May 9, 2019) (dismissing wrongful termination claim because "Plaintiff's EEOC charge does not mention his termination[,]" and focused instead on discrete acts occurring four and a half months earlier). As Ms. Hoffman's Charge of Discrimination only addresses the denial of her accommodation requests, she has failed to exhaust her administrative remedies as it pertains to the wrongful discharge elements of Counts I through VI.

### 2. Plaintiff's Claim to Disability Discrimination under the VHRA is Untimely (Count VI)

Ms. Hoffman's disability discrimination charge, which she filed with the EEOC in July 2022, was untimely as a matter of state law.  The VHRA, like Title VII and the ADA, contains a mandatory charge-filing provision that requires a would-be complainant to file a charge with the Virginia Office of Civil Rights within 180 days of the alleged discriminatory act. Va. Code §2.2-3907(A) (charge-filing requirement); Va. Code § 2.2-522 (administrative complaints "shall be filed … within 180 days of the alleged discriminatory event"). Both her Charge and her Complaint state that Inova denied her medical exemption request on January 6, 2022. *Id*; Compl. ¶ 4. Ms. Hoffman's Charge was filed with the EEOC on July 13, 2022. *Id*. ¶ 4. This was 189 days after the alleged discriminatory act – the denial of her medical exemption request – meaning her VHRA state law claim of disability discrimination was untimely. Accordingly, Ms. Hoffman's state law claim of discrimination in Count VI should be dismissed based on her failure to exhaust administrative remedies and because it is now time-barred.

### C. Plaintiff's Religious Discrimination Claims Are Substantively Insufficient to Establish She Held a Bona Fide Religious Belief Preventing Her from Being Vaccinated Against COVID-19 (Count I)

Ms. Hoffman has claimed that Inova failed to excuse her from obtaining a COVID-19 vaccine despite religious beliefs that prohibited her from being vaccinated. But those allegations,

even if accepted on their face, demonstrate that she failed to communicate to Inova any bona fide religious belief that conflicted with Inova's COVID-19 vaccine requirement, so her claim should be dismissed.

Title VII prohibits covered employers from "discharg[ing] any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). The term "religion" "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate [] an employee's . . . religious observance or practice without undue hardship[.]" 42 U.S.C. § 2000e(j). The latter part of this definition "makes it an unlawful employment practice under section 703(a)(1) [*i.e.*, 42 U.S.C. § 2000e-2(a)(1)] for an employer to fail to reasonably accommodate the religious practices of an employee[,]" absent undue hardship. 29 C.F.R. § 1605.2(b)(1). To state a plausible failure-to-accommodate claim under Title VII, Plaintiff must plead, and ultimately show, that: "(1) [she] has a bona fide religious belief that conflicts with an employment requirement; (2) [she] informed the employer of this belief; [and] (3) [she] was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (citations omitted); *see also EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (same).

To establish the first element of the claim, a plaintiff must provide sufficient information to allow the Court to conclude that the stated belief is a sincerely held *religious* belief. *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 142-43 (4th Cir. 2017). Those allegations must describe beliefs rooted in religious concerns, not "purely secular" concerns, and establish that the employer was advised of the nature of her beliefs. *McManus v. Bass*, No. Civ. A. 2:05CV117, 2006 WL 753017, at *4 (E.D. Va. Mar. 21, 2006) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215-216 (1972)); *see*

*also Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015) (noting, in the First Amendment context, that a "request for an accommodation must be sincerely based on a religious belief and not some other motivation").

"[I]n determining whether an employee's beliefs are religious in nature, courts have analyzed whether the beliefs in question (1) 'address fundamental and ultimate questions having to do with deep and imponderable matters,' (2) are 'comprehensive in nature,' and (3) 'are accompanied by certain formal and external signs.'" *Ellison*, 2023 WL 6038016, at *4 (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981)); *see also Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir. 1986) (describing these *Africa* factors as "useful indicia" of whether beliefs are religious rather than secular). A reluctance to be vaccinated is not, on its own, a religious belief. *See Fallon v. Mercy Catholic Med. Ctr. of Se. Penn.*, 877 F.3d 483 (3d Cir. 2017) (plaintiff's moral or religious belief that he should not harm his own body by receiving an influenza vaccine was an isolated teaching, not a comprehensive system of beliefs about fundamental or ultimate matters). Moreover, despite Ms. Hoffman's clearly communicated views on the necessity and efficacy of COVID-19 vaccines, "Title VII does not protect social, political, or economic views or personal preferences. Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs . . . under Title VII." EEOC Guidance, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at L.2, *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last updated July 12, 2022).

"[T]he very concept of ordered liberty precludes allowing every person to make [her] own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972) (addressing the importance of distinguishing whether the claims brought by the Amish at issue were "rooted in religious belief" or a "subjective evaluation and rejection of the contemporary secular values accepted by the majority"). But both the Complaint and the exemption requests to which it refers demonstrate that Ms. Hoffman failed to allege that a specific tenet or principle of her religious beliefs did not permit her to be vaccinated. "As another district judge has persuasively remarked, "[t]he important question isn't whether an employee has a religious belief not to mistreat [his] body; the question is whether the employee's belief that the [COVID-19 vaccine] qualifies as mistreatment is itself based in religion." *McCoy v. Cox Communications,* 1:22-cv-01289-DJN-JFA (E.D. Va. Jan. 22, 2024) *citing Petermann v. Aspirus, Inc*., No. 22-CV-332, 2023 (WL 2662899 at *2) (W.D. Wis. Mar. 28, 2023), *see also Griffin v. Mass. Dep't of Revenue*, Civil Action No. 22-cv-11991, 2023 WL 4685942, at *7 (D. Mass. July 20, 2023) (A complaint "must allege some plausible set of facts from which it may be reasonably inferred *both* that she believes in or practices a particular form of religion *and* that her religion has a specific tenet or principle that does not permit her to be vaccinated[.]") (emphasis in original).

Ms. Hoffman's exemption request alleged "it would be dishonoring to God for me to put something into my body for which I had a conscientious objection … Allowing substances to be introduced into my body that I believe God has directed me not to receive and believe to be displeasing to God would be a violation of my sincerely held religious beliefs." Exhibit 2 at p. 10; Compl. ¶ 28. However, she cited no tenet of that religion that proscribed the vaccines. Rather, her belief system involves her "ask[ing] God for direction through prayer, listen to my conscience,

and wait for God's answer to guide me in all decisions in my life ...." ECF No. 1-3 at p. 3. Her religious beliefs do not compel her to eschew other medicines or products; rather, she "strive[s] to use only medicines and products that are acceptable to God." Exhibit 2 at p. 4. There was nothing about Inova's vaccination requirement inherently antithetical to Ms. Hoffman's belief system.

Religious discrimination claims associated with vaccine mandates are no longer rare following the worldwide COVID-19 pandemic, and this Court and the large number of district courts nationwide have confronted similar issues. Those that have considered claims similar to those of Ms. Hoffman have concluded the beliefs are not religious in nature. *See Ellison*, 2023 WL 6038016, at *5 ("[E]xemption requests 'predicated fundamentally on concerns with [safety] and [the plaintiffs'] right to bodily integrity' – even if based on the belief that [the plaintiff's] body is a temple and ratified by prayer – are at bottom 'medical judgments ..., not matters of religious belief'"); (internal citation omitted); *McCoy v. Cox Communications, id.*; *Kiel v. Mayo Clinic Health System Southeast Minnesota*, __ F. Supp. 3d ___ , 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023) (plaintiff's belief that "she must protect her body, God's Temple, and cannot put into it substances which are impure or dangerous" not religious); *Griffin*, 2023 WL 4685942, at *6-7 (plaintiff's belief that she had "closely contemplated with God and ha[d] been shown that [she] should not receive the COVID-19 vaccine" not religious and would, if accepted, amount to "a virtually automatic exception from the vaccination requirement").

Moreover, Plaintiff's claim that she must do what God directs her after prayer constitutes the sort of blanket privilege that is not cognizable under Title VII. *See Ellison*, 2023 WL 6038016, at *5 ("Jenkins's belief that if, after his prayer, 'God answers and interdicts [his] participation,' amounts to the type of 'blanket privilege' that undermines our system of ordered liberty."); *accord Lucky v. Landmark Med. of Mich., P.C.*, Case No. 23-cv-11004, 2023 WL 7095085, at **1, 4-7

(E.D. Mich. Oct. 26, 2023) (plaintiff's beliefs "aris[ing] from her own scriptural interpretation and private prayer and communication with God[, in which] God spoke to her in her prayers and instructed her not to receive the vaccine[,]" if accepted, would amount to an impermissible "'blanket privilege to make [her] own standards on matters of conduct in which society as a whole has important interests'") (quoting *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 WL 362392, at *4 (E.D. Pa. Jan. 23, 2023)); *Prida v. Option Care Enters.*, Case No. 5:23-cv-00905, 2023 WL 7003402, at **4-6 (N.D. Ohio Oct. 24, 2023) (plaintiff's belief that her body is "God's temple," even when accompanied by "some religious language, including several quotes from the Bible," amounted to a request for "carte blanche to accept or reject nearly any condition of her employment" that, instead of "present[ing] a specific religious teaching that conflict[ed] with a specific policy of her employer, . . . attempts to dress up an isolated moral teaching using biblical quotes and spiritual language").

Nor does Ms. Hoffman's claim that COVID-19 vaccines are taboo because of the use of fetal cell lines in their development, (*see* Compl. ¶ 33), avail her.  First, she never claimed that her religion prohibited her from benefiting from medicines and treatments created this way.  Moreover, a COVID-19 vaccine developed without the use of fetal cell lines was available to her before her clinical privileges were administratively suspended, and would have satisfied the immunization requirements under the IHS Mandatory Immunization Policy for Medical Staff such that her privileges would have been quickly re-instated. The Novavax vaccine did not use fetal cell lines in its development and/or testing. *See Ellison*, 2023 WL 6038016, at n. 11, *11-12; *see also* U.S. Food and Drug Administration, FDA Authorizes Emergency Use of Novavax COVID-19 Vaccine, located at https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-

fda-authorizes-emergency-use-novavax-covid-19-vaccine-adjuvanted (July 13, 2022). Ms. Hoffman's Title VII failure to accommodate claim should, therefore, be dismissed.

### D. Plaintiff Has Not Plausibly Alleged Her Medical Condition Precluded Her From Being Vaccinated Against COVID-19

Ms. Hoffman has alleged that Inova should have accommodated her disability by granting her a medical exemption to the COVID-19 vaccine mandate. At the same time, she has failed to allege that she was entitled to one. Ms. Hoffman has acknowledged that her role and position made her subject to the CMS Mandate. She also acknowledges that the CMS Mandate guidance for healthcare providers "provided the basis for medical exemptions to vaccinations where recognized medical conditions medically contraindicate vaccination with the Covid vaccines." Compl. ¶ 24. Her Complaint never, however, alleges that her medical condition fit within those exemptions such that she should have been granted an exemption.

To support a failure-to-accommodate claim under the ADA, Ms. Hoffman must sufficiently plead, and ultimately establish: "'(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001)).[5] Plaintiff alleges her "disability" of dysautonomia required an accommodation and generally alleges that "when acute, [it] substantially limits her major life activities…." Compl.

---

[5] The VHRA similarly provides that an employer may not "[r]efuse to make reasonable accommodation to the known physical and mental impairments of an otherwise qualified person with a disability, if necessary to assist such person in performing a particular job …" Va. Code Ann. § 2.2-3905.1(B)(1) and is interpreted consistent with the ADA's requirements. *Id*. at 2.2-3902. However, Ms. Hoffman's VHRA disability claim is time-barred. *See* Argument at B(2), above.

¶ 87.

Even if we assume Plaintiff has alleged a qualifying disability, she has not pled facts to show Inova could have provided her with the accommodation she sought or that Inova's reasons for denying her exemption were discriminatory.  A "reasonable accommodation" is one that "enable[s] an individual with a disability … to perform the essential functions of [her] position" or to "enjoy equal benefits and privileges of employment as are enjoyed by [ ] other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o).  As Ms. Hoffman acknowledges, however, the CMS Mandate circumscribed Inova's ability to grant medical exemptions by requiring covered entities to refer to the CDC's "Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States" for a list of recognized clinical contraindications to receiving a COVID-19 vaccine. 86 Fed. Reg. at 61572; see also Centers for Disease Control & Prevention, *Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States*, Internet Archive, *available at* https://web.archive.org/web/20211216172811/https://www.cdc.gov/vaccines/covid-19/downloads/summary-interim-clinical-considerations.pdf (showing the information available on Dec. 16, 2021). Inova explained the exemption criteria in its medical exemption request form. Exhibit 3 at p. 1.  Nor did Ms. Hoffman plead that her medical condition actually limited her ability to receive a COVID-19 vaccine. Rather, she states "she has demonstrated a sensitivity reaction" and a "medical sensitivity to vaccination" (Compl. ¶¶ 78, 84).

Nor did her actual exemption request provide information qualifying her for a medical exemption. The list of recognized clinical contraindications to receiving a COVID-19 vaccine did not include dysautonomia. 86 Fed. Reg. at 61572. Covered providers considering medical exemption requests were to "confirm[ ] recognized clinical contraindications to COVID-19

vaccines … which support[] the staff member's request, [and which] must be signed and dated by a licensed practitioner, who is not the individual requesting the exemption, and who is acting within their respective scope of practice." *Id*. at 61572. An exemption request had to "contain all information specifying which of the authorized COVID-19 vaccines are clinically contraindicated for the staff member to receive and the recognized clinical reasons for the contraindications; and a statement of the authenticating practitioner recommending that the staff member be exempted from the facility's COVID-19 vaccination requirements based on the recognized clinical contraindications." *Id. See* Exhibit 3 at 1.

This lack is fatal to Ms. Hoffman's claim. *Fierce v. Burwell*, 101 F. Supp. 3d, 543, 549-550 (D. Md. 2015) (internal citation omitted) (dismissing claims because plaintiff failed to allege her disabilities required the requested accommodations). Her healthcare provider stated her dysautonomia "is known to be triggered by vaccinations, hence the contraindication to vaccination", and that the COVID-19 vaccine "could be detrimental to [Ms. Hoffman's] health" (*id.*), but never explains how this would be the case other than that Ms. Hoffman *might* experience a non-anaphylactic reaction. Exhibit 3 at p. 5. As such, Ms. Hoffman's exemption request failed on its face to supply any substantive reason that the COVID-19 vaccine was clinically contraindicated and Count IV of her Complaint should be dismissed.

### E. Ms. Hoffman Has Failed to State a Disparate Treatment Claim on the Basis of Either Religion or Disability (Counts II, III, V, and VI)[6]

"Courts have recognized that employees may utilize two theories in asserting religious discrimination claims[,]" known as the "[1]'disparate treatment' and [2] 'failure to accommodate' theories." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996). The same is

---

[6] Plaintiff's Count VI appears to start paragraph numbering at 74, after previously skipping those numbers with Count IV.

true in the ADA context where an individual can set forth claims of both disparate treatment and failure to accommodate. *See Shin v. Univ. of Md. Med. Sys. Corp.*, 369 Fed. Appx. 472, 479 (4th Cir. 2010). However, where, as here, a plaintiff alleges both theories of discrimination, each claim must be supported by plausibly pled facts that could, if proven, entitle her to relief. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Although Ms. Hoffman could allege that she was subject to disparate treatment because of her religion on facts other than those undergirding her failure-to-accommodate claim in Count I, Counts II and III of the Complaint are each based on identical allegations – namely, the denial of Ms. Hoffman's religious exemption request and the subsequent end of her employment with NAPA, and duplicative of the failure to accommodate allegations made in Count I. *Compare* Compl. ¶¶ 58, 60 (Count II) and . ¶¶ 69, 71 (Count III) with Count I (paragraphs). Similarly, Counts V and VI of the Complaint are grounded on the same alleged facts undergirding Count IV's disability discrimination failure to accommodate claim– the denial of Ms. Hoffman's medical exemption request and end of her employment with NAPA. *Compare id*. ¶ 101 (Count V) and ¶ 85 (Count VI) with ¶ 92 (Count IV). Substantively, none of these counts rest on a plausible independent factual basis. Accordingly, Counts V and VI should be dismissed.

### 1.    Ms. Hoffman Has Failed to Allege Facts Sufficient to State a Plausible Claim that Her Employment Ended Because of Her Religion (Counts II and III)

Ms. Hoffman's Complaint must allege facts sufficiently plausible to suggest that she can prove "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). To satisfy the fourth element, Ms. Hoffman will need to allege facts sufficient to create a plausible inference that Inova discriminated against her "'<u>because of</u> [her] . . . religion[.]'" *McCleary-Evans v. MD*

*DOT*, 780 F.3d 582, 585 (4th Cir. 2015) (emphasis in *McCleary-Evans*); *see also Chalmers*, 101 F.3d at 1017 (For disparate treatment purposes, "an employee must demonstrate that the employer treated [her] differently than other employees because of her religious beliefs."). Consistent with these requirements, "'courts are empowered to screen claims of religious discrimination that arise out of bona fide, facially neutral employment requirements, where the claim of religious practice appears to be entirely ad hoc or otherwise without a plausible factual basis.'" *Lucky*, 2023 WL 7095085, at \*6 (quoting *Griffin*, 2023 WL 4685942, at \*6). Because Ms. Hoffman's claims lack any such plausible factual basis, Counts II and III of the Complaint should be dismissed.[7]

Ms. Hoffman acknowledges that Inova's Medical Staff Policy "require[d] all of its employees and contracted workers… to be vaccinated against COVID-19[.]" Compl. ¶ 15 & n. 1; *see* Exhibit 1. And, implicitly, that Inova policy was to take action against contractors and employees who failed to vaccinate for other, non-religious reasons. Yet she has failed to set forth sufficient facts that might plausibly show that she was treated differently from any similarly situated individual because of her religious beliefs. Viewed in the light most favorable to Ms. Hoffman, the Complaint merely alleges, "[u]pon information and belief," that Inova "chose to exempt employees [and contractors] who held to more conventional beliefs related to religious exemptions to vaccines" while "den[ying] exemptions to employees [and contractors] like Mrs. Hoffman who held less well-known or respected religious beliefs." Compl. ¶ 59; *see also* Compl. ¶ 70. As such, Ms. Hoffman's allegation is, at most, "*consistent* with discrimination[;] it does not alone support a *reasonable inference* that the decisionmakers were motivated by [religious] bias."

---

[7] Significantly, the CMS Mandate further stated that its provisions "preempt[] the applicability of any State or local law providing for exemptions to the extent such law provides broader exemptions than provided for by Federal law[.]" *Id.* As such, Count III is preempted to the extent Virginia law may be more protective than federal law. *Miller v. Charleston Area Med. Ctr.*, No. 2:23-CV-00340, 2023 WL 7549365, at \*8 (S.D. W. Va. Nov. 14, 2023).

*McCleary-Evans*, 780 F.3d at 586 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis in *McCleary-Evans*).  And her "on information and belief" allegation is completely unsupported by other allegations that might take it beyond speculation to plausible entitlement to relief.  While "detailed factual allegations are not required, Rule 8 demands that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief." *Twombly*, 550 U.S. at 555; *see also Daniel v. Kroger Ltd. P'ship I*, No. 3:11cv245-DWD, 2011 WL 5119372, at *4 (E.D. Va. Oct. 27, 2011) (recognizing religious disparate treatment claims fall short "if an employer requires all employees to work on Sunday regardless of religion[.]") (citing *Chalmers*, 101 F.3d at 1018).

Where, as here, a plaintiff's pleading allegations give rise to an "obvious alternative explanation," *Iqbal,* 556 U.S. at 682, the Complaint "stops short of the line between possibility and plausibility of 'entitle[ment] to relief[.]'" *Twombly, 550 U.S.* at 557; *accord Doe(s) v. Pittsburgh Reg'l Transit*, Civil Action No. 2:22-cv-01736, 2023 WL 4867850, at *8 (W.D. Pa. July 31, 2023) (dismissing Title VII disparate treatment claim where employer's "[p]olicy required all employees to be vaccinated and nothing in the Amended Complaint or [that p]olicy indicates that employes with certain religious beliefs were treated differently than other employees"); *Johnson v. Tyson Foods, Inc.*, No. 21-cv-01161-STA-jay, 2023 WL 3901485, at *3 (W.D. Tenn. June 8, 2023) (dismissing state law disparate treatment claim where "[a]ll employees were required to be vaccinated by a certain date regardless of their religious beliefs"); *Tipcke v. Olmsted Med. Ctr.*, Civil No. 22-2470 ADM/JFD, 2023 WL 2776098, at * (D. Minn. Apr. 4, 2023) (dismissing disparate treatment claim where plaintiff "allege[d] that she was discharged for failing to comply with an employment policy that applied to all employees" – namely, its COVID-19 Vaccine Mandate – and "d[id] not allege any facts to show that she was treated differently from other

employees because of her religious beliefs"); *D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988, 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023) (plaintiff failed to allege facts giving rise to inference of religious discrimination where plaintiff alleged she was discharged "because [her employer] insisted that she take [the COVID] vaccine – <u>not</u> because of her religion") (emphasis in original).

Ms. Hoffman's religious disparate treatment claims – which, substantively, turn exclusively on Inova's alleged failure to accommodate her religious beliefs, are at best duplicative of the allegations in Count I.  No independent allegations  serve to "nudge those claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 545, 570; *see also Coleman*, 626 F.3d at 190-91 (affirming dismissal of Title VII claim where complaint "conclusorily allege[d] that [plaintiff] was terminated based on his race, [but did] not assert facts establishing the plausibility of that allegation"). Counts II and III should be dismissed.

### 2.   Ms. Hoffman Has Failed to Allege Facts Sufficient to State a Plausible Claim that Her Employment Ended Because of Her Disability (Counts V and VI)

To prevail on a claim for disability discrimination, a plaintiff must plead and prove facts showing that (1) she has a disability, (2) she is a "qualified individual" for the employment in question, and (3) the employer took an adverse employment action against her "because of her disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). *See also Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 379-80 (4th Cir. 2022) (same). Ms. Hoffman has failed to allege any fact that would allow the Court to conclude that Inova took an adverse employment action against her because of her disability, and so Counts V and VI should be dismissed.[8]  Indeed, Ms. Hoffman concedes that Inova's Medical Staff Policy "require[d] all of its

---

[8] As discussed above at Section B(2), Ms. Hoffman's state disability discrimination claim (Count VI) is untimely.  Moreover, because the CMS Mandate provisions "preempt[ed] the applicability of any State or local law providing for exemptions to the extent such law provides broader

employees and contracted workers… to be vaccinated against COVID-19[.]" Compl. ¶ 15 & n. 1; *see* Exhibit 1. As with her religious discrimination claims, however, she has failed to plausibly allege any fact that could support her claim she was treated differently than any other unvaccinated Inova contractor because of her disability. To be sure, the Complaint alleges, "Defendants and their agents treated Mrs. Hoffman in a disparate manner, granting exemption requests to non-disabled employees, while depriving Mrs. Hoffman of similarly situated favorable opportunities, advantages, and treatment," (Compl. ¶ 100) but offers no factual support for this allegation whatsoever.  Moreover, as discussed above, she acknowledges that the CMS Mandate dictated not only how a covered entity should grant medical exemptions from the vaccine but also which medical conditions contraindicated vaccination. *See* Section D, *infra.*  At no point in the Complaint does she allege that her medical condition met those conditions.  These sparse allegations are simply "labels and conclusions" that do not meet the pleading standards under *Twombly*. 550 U.S. at 555 or create a "reasonable inference" of discrimination. *See Miller v. Md. Dep't. of Natural Res.*, 813 Fed. Appx. 869, 874 (4th Cir. 2020) (citing *Twombly*, 550 U.S. at 555). Accordingly, Counts V and VI should be dismissed for failure to state a claim.

---

exemptions than provided for by Federal law[,]" 86 Fed. Reg. at 61570. Plaintiff cannot claim that Virginia law is more protective than federal law in this instance. *See infra* n. 10.

## V.    CONCLUSION

For these reasons, Inova respectfully requests that the Court grant its Motion, dismiss the

Complaint with prejudice, and award Inova such other relief as the Court deems just and proper.


Dated: January 26, 2024                          Respectfully Submitted,

                                                 */s/ Nancy N. Delogu*
                                                 Nancy N. Delogu (VSB No. 37826)
                                                 LITTLER MENDELSON, P.C.
                                                 815 Connecticut Avenue NW
                                                 Suite 400
                                                 Washington, DC 20006.4046
                                                 Telephone:    202.842.3400
                                                 Facsimile:     202.842.0011
                                                 nndelogu@littler.com

                                                 Alexander P. Berg (VSB No. 95557)
                                                 Lauren M. Bridenbaugh (VSB No. 90586)
                                                 LITTLER MENDELSON, P.C.
                                                 1800 Tysons Boulevard
                                                 Suite 500
                                                 Tysons Corner, VA 22102
                                                 Telephone: 703.442.8425
                                                 Facsimile: 703.442.8428
                                                 aberg@littler.com
                                                 lbridenbaugh@littler.com

                                                 *Counsel for Defendant Inova Health Care Services*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of January, 2024, I caused a copy of the foregoing

**Memorandum of Law in Support of Inova's Motion to Dismiss**, to be served through the

Court's Electronic Case Filing (ECF) system on the following counsel of record:

>Timothy P. Bosson, Esq. (VSB: 72746)
>Isaiah R. Kalinowski, Esq. (VSB: 71125)
>Bosson Legal Group, PC
>8300 Arlington Blvd., Suite B2
>Fairfax, VA 22031
>tbosson@bossonlaw.com
>ikalinowski@bossonlaw.com
>ajones@bossonlaw.com
>Ph: (571) 775-2529
>
>*Counsel for Plaintiff*
>
>Scott A. Siegner, Esq.
>W. Ryan Waddell, Esq.
>Ogletree Deakins Nash Smoak & Stewart, PC
>Riverfront Plaza – West Tower
>901 East Byrd Street, Suite 1300
>Richmond, VA 23219
>Scott.siegner@ogletree.com
>Ryan.waddell@ogletree.com
>Ph: 804-663-2330
>
>*Counsel for Defendant North American Partners
>in Anesthesia (Virginia) LLC*

>*/s/Nancy N. Delogu*
>Nancy N. Delogu