**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **KELLY HOFFMAN,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:23-cv-01696-MSN-IDD** |
| **INOVA HEALTH CARE SERVICES et al.,**<br>**Defendants.** | |

**INOVA'S REPLY TO PLAINTIFF'S OPPOSITION TO
INOVA'S MOTION TO DISMISS**

Plaintiff Kelly Hoffman's Opposition brief confirms Inova's arguments that Inova acted lawfully when it administratively suspended her clinical privileges for failing to comply with its Immunization Program  Policy ("IPP"). At the outset, Ms. Hoffman's argument that Inova is responsible as her joint employer relies on unsupported assertions and legal conclusions that are not entitled to deference; moreover, documents filed by her employer, North American Partners in Anesthesia ("NAPA"), demonstrate that Inova's decision to suspend her clinical privileges  while she remained noncompliant with its vaccine policy did not, in fact, cause NAPA to separate her from its employment. As all the claims levied against Inova presume Inova employed her, these shortcomings are fatal to her Complaint.

Ms. Hoffman's religious discrimination claims fail for other reasons.  Her Count I failure-to-accommodate religious discrimination claim should be dismissed because she could have complied with the IPP by getting the Novavax vaccine, allowing her to maintain her clinical privileges without violating her religious convictions against abortion. Moreover, her disparate treatment religious discrimination claims in Counts II and III (which Plaintiff agrees should be analyzed together) lack factual support for the proposition that Inova treated similarly situated

team members differently, and therefore are insufficient to raise her asserted right to relief above the speculative level.

Ms. Hoffman's disability discrimination claims also contain fatal flaws beyond the fact that Inova did not jointly employ her with NAPA. Count IV fails, as the undisputed allegations demonstrate Plaintiff was not a qualified individual with a disability entitled to the accommodation she sought. Ms. Hoffman does not challenge Inova's arguments regarding the disparate treatment claims in Counts V and VI. Finally, her Opposition confirms that Count VI is untimely. The Complaint should be dismissed in its entirety.

I.    **Ms. Hoffman's Joint Employment Claims are Unsupported by Allegations of Fact**

Rule 8 of the Federal Rules of Civil Procedure requires Plaintiff's Complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint must provide "sufficient detail about the claim to show that the plaintiff has a more-than-conceivable chance of success on the merits." *Tickles v. Johnson*, 805 F. App'x 204, 206 (4th Cir. 2020) (quoting *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015)). Otherwise, the court is "left with mere speculation." *Tickles*, 805 F. App'x at 208. In this case, factual information such as who supervised Plaintiff, whether Inova kept her employment records, who actually scheduled her work, who conducted performance evaluations, who decided she should be assigned to Inova facilities, and why she was eventually separated from NAPA's employment is information uniquely in Plaintiff's control, yet not alleged in the Complaint. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. Plaintiff's failure to provide such factual support dooms her claim.

In her Opposition, Ms. Hoffman argues Inova had the "de facto authority" to separate her, citing to her employment contract with NAPA, which allegedly allowed Inova to "demand" that she be terminated. Opp'n at 4 (citing ECF No. 11-1 at ¶ 7(V)). Setting aside the fact that there is no allegation that Inova was even aware such a contract existed, a review of that contract (something she notably ***never had*** with Inova) shows Plaintiff has misrepresented that document, which actually describes NAPA's right to terminate Ms. Hoffman's employment for "cause," if ***it*** so chose. ECF No. 11-1 at ¶ 7 (… "Employer may terminate this Agreement for Cause … Employer shall have "Cause" … upon the following, as determined by Employer in its sole discretion…."). Specifically, *NAPA* reserved the right to terminate Ms. Hoffman's employment if a "facility" or "other site" demanded that she be "removed from providing services at such facility or site[.]" *Id.* at ¶ 7(A)(v). This is not, notably, a contract giving Inova the right to demand she be removed or to terminate her employment. In fact, despite her Complaint's assertion that Inova's decision to suspend her clinical privileges for failure to comply with the IPP rendered her employment with NAPA a "dead letter," (Complaint at ¶ 36) documents filed by NAPA demonstrate that it offered to reassign Ms. Hoffman to another, non-Inova facility both before and after her clinical privileges at Inova were administratively suspended. *See* ECF No. 11 at 6 ("After declining to work at another non-Inova facility proposed by NAPA, Plaintiff's employment with NAPA ended September 29, 2022."); *see also* ECF No. 11-4, at p. 1.

Ms. Hoffman urges the Court to accept that she has sufficiently pled that she was subject to Inova's day-to-day supervision, the second *Butler* factor. However, she has misstated the allegations of her own Complaint, which *actually* says, without supporting factual allegations, that Inova ***retained*** the right to do these things and does not allege that Inova ever actually did so. Compl. ¶ 13. She further argues Inova controlled her "by mandating she follow Inova's

'compliance Plan, Code of Conduct and policies'" Opp'n at 5 (quoting ECF No. 11-1, at ¶ 15(E)). Again, her employment contract with NAPA does not confer upon Inova, a non-party, control. In actuality, the cited provision makes clear that *her NAPA contract* required her to "maintain membership in good standing on the active Medical Staff … to maintain privileges and comply with the facility's Medical Staff Bylaws, rules and regulations, and with Employer's and the facility's compliance Plan, Code of Conduct and policies." *Id*. This provision does not remotely suggest that Inova could supervise her day-to-day work or otherwise have control over her.

Ms. Hoffman now contends the eighth *Butler* factor is also pled in her Complaint, because she has alleged she was assigned exclusively to Inova facilities. Opp'n at 5. If so, that was at least partially by her own choice: NAPA actively offered Ms. Hoffman alternative positions at non-Inova facilities in the region as early as December 2021. *See* ECF No. 11-4, at p. 1. Evidently, Inova could not have controlled Ms. Hoffman's purported employment with NAPA when she repeatedly chose to forgo alternative, non-Inova work locations NAPA offered.

In sum, Ms. Hoffman has failed to allege facts that support her joint employment claim. As all of her claims require that Inova was her employer in fact, her Complaint should be dismissed.

## II.    Plaintiff Has Not Pleaded She Had a Sincerely Held Religious Belief That Conflicted with Inova's COVID-19 Vaccine Requirement

Ms. Hoffman alleges in her Opposition that she advised Inova of three distinct beliefs that should have entitled her to a religious exemption from the COVID-19 vaccine requirement (Opp'n at 15-21), but she has failed to plead facts that, if true, would plausibly state a claim for relief. The Parties agree that a plaintiff's beliefs must be both (1) "sincerely held" and (2) "religious" in nature

to be protected under Title VII.  Inova's Mem. at 12-13; Opp'n at 6 (same).[1] However, Ms. Hoffman has not plausibly alleged that the beliefs she communicated to Inova were both religious and conflicted with Inova's IPP requirements.

### A.  In Determining Whether a Particular Belief Is Religious, the *Africa* Factors Appropriately Guide the Court's Analysis

Plaintiff asks this Court to make new law by turning from its prior analysis guided by *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981), and instead adopting the Second Circuit's more subjective standard in *Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984), regarding what constitutes a religious belief.  *See* Opp'n at 7-12. However, given the wisdom of the more objective *Africa* factors – which multiple circuits have expressly adopted, the Fourth Circuit and this Court have relied upon, and numerous courts from across the country have cited in the context of COVID-19 vaccination exemption claims like this lawsuit – this Court should follow the clear majority view and continue to apply the *Africa* standard when evaluating religious discrimination claims.

In *Africa*, the Third Circuit explained that when considering whether alleged beliefs are entitled to protection as religious in nature, "[the] court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things." 662 F.2d at 1030 (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). The former consideration accounts for the Supreme Court's emphasis in *Seeger* that "'while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held[,]'" so that the mere invocation of beliefs does not "become 'a limitless excuse for avoiding all unwanted legal obligations.'" *Id.* (quoting *Seeger*, 380 U.S. at 185; other citations omitted).

---

[1] Inova does not contend that the sincerity (or lack thereof) of Ms. Hoffman's beliefs can be resolved at the motion-to-dismiss stage.  *See Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132 (MSN/LRV), ___ F. Supp. 3d ___, 2023 WL 6038016, at *4 (E.D. Va. Sept. 14, 2023).

With respect to the latter consideration, the *Africa* Court aptly observed that any workable definition of religious belief must be broader than a "wholly theistic interpretation" centered around a god or Supreme Being. *Id.* at 1031. "[A]t the same time," the Court recognized, "'the very concept of ordered liberty precludes allowing' . . . any [] person[] a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Id.* (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). Thus, to avoid situations where an individual could avoid any obligation based on nothing more than the "limitless excuse" of an individual's say-so, the Court, "decline[d] to adopt [] a self-defining approach" to religion. *Id.* at 1035. Instead, the Third Circuit adopted "three 'useful indicia'" that both consider and contextualize the individual's stated beliefs when defining whether beliefs are religious:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id.* at 1032.

In *Patrick*, a First Amendment challenge to prison regulations filed by an inmate, the Second Circuit adopted an approach to evaluating what may qualify as religious posited by the philosopher William James that defines religious belief as "'the feelings, acts, and experiences of individual men in their solitude, so far as they apprehend themselves to stand in relation to whatever they may consider the divine.'" 745 F.2d at 158 (citing W. James, The Varieties of Religious Experience 31 (1910)). In reaching this outcome, the Second Circuit spared only a single sentence on the *Africa* factors, criticized as creating a "narrow definition of 'religious belief[.]'" *Id.* at 156; *see id.* at 156 n.4 (same). The *Patrick* Court did not otherwise expand, however, on *why* it reached this conclusion or how it believed that the *Africa* standard erred; indeed, the Second Circuit, like the Third Circuit, explained that "beliefs must be sincerely held and religious in

nature" to be protected. *Id.* at 157 (*citing Seeger*, 380 U.S. at 185); *see Africa*, 662 F.2d at 1030 (similar) (*citing Seeger*, 380 U.S. at 185).

By the time the Fourth Circuit decided *Dettmer v. Landon*, it had the benefit of both the Second Circuit's *Patrick* decision and the Third Circuit's *Africa* decision. 799 F.2d 929 (4th Cir. 1986). Tellingly, in the context of whether the Church of Wicca constitutes a religion for Free Exercise purposes, the Fourth Circuit cited only the latter. *See id.* at 931. Since *Dettmer* was decided, this Court and the Fourth Circuit, along with multiple sister circuits, have "cited with approval the seminal United States Court of Appeals for the Third Circuit case [in *Africa*] describing several 'useful indicia' to evaluate whether beliefs are religious rather than secular…." *Versatile v. Johnson*, No. 3:09CV120, 2011 WL 5119259, at *5 (E.D. Va. Oct. 27, 2011); *Doswell v. Smith*, No. 94-6780, 139 F.3d 888, at *3 (4th Cir. Mar. 13, 1998); *accord Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000); *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229-30 (9th Cir. 1996).

Conversely, the Fourth Circuit and its district courts have never cited *Patrick* outside the context of claims by inmates against prison officials (under the First Amendment, Religious Freedom Restoration Act, and/or Religious Land Use and Institutionalized Persons Act (RLUIPA)). *See Mickle v. Moore* (*In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*), 174 F.3d 464, 468 (4th Cir. 1999) (cited in Opp'n at 7); *McManus v. Bass*, No Civ. A. 2:05CV117, 2006 WL 753017, at *7 (E.D. Va. Mar. 22, 2006). And while Plaintiff points to *EEOC v. Consol Energy, Inc.*, 860 F.3d 131 (4th Cir. 2017), which is a Title VII case, the *Consol Energy* Court did not cite or otherwise refer to *Patrick* at all. Opp'n at 7-9; *see generally* 860 F.3d 131 (4th Cir. 2017).

This Court has also cogently explained why the *Africa* standard is beneficial for courts and litigants alike as compared to the Second Circuit standard:

> While the Fourth Circuit has not explicitly adopted the multi-part *Africa* test to determine whether a belief is religious in nature, it cited *Africa* with approval over then-existing Second Circuit case law utilizing the different Jamesian approach. *Dettmer,* 799 F.2d at 932…. **This Court similarly finds that the more subjective approach does not offer clear boundaries that a court, and therefore litigants, must follow when evaluating or presenting claims.** The Court thus declines to apply the Second Circuit's Jamesian approach[.]

*Versatile*, 2011 WL 5119259, at *6 n.11 (emphasis added). Significantly, when reviewing the *Versatile* decision on appeal, the Fourth Circuit "affirm[ed] for the reasons stated by the district court." *Versatile v. Johnson*, 474 F. App'x 385, 385 (4th Cir. 2012).

Consideration of the more objective *Africa* factors adopted by the Third, Eighth, and Ninth Circuits, and cited with approval by the district courts in the Fourth Circuit, is consistent with the Supreme Court's long-standing instruction that "the very concept of ordered liberty precludes" subjective standards under which "every person [could] make his [or her] own standards on matters of conduct in which society as a whole has important interests." *Yoder*, 406 U.S. at 215-16; *see also* Opp'n at 17 ("Plaintiff appreciates the Court's grave responsibility to safeguard 'ordered liberty,'" consistent with *Yoder*).[2] That standard has endured for more than 50 years.

In fact, both this Court and numerous courts across the country have cited the *Africa* factors in the context of analyzing claims that, like this case, involve Title VII religious discrimination allegations in the context of COVID-19 vaccination exemption requests. *Ellison*, 2023 U.S. Dist. LEXIS 124861, 2023 WL 6038016, at *4 n.6 (relying on *Africa* framework); *accord Osborne v.*

---

[2] Context also matters. As the *Yoder* Court observed, "This case, of course, is not one in which any harm to the physical or mental health of the child or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred." 406 U.S. at 230. By contrast, the Supreme Court more recently stated, "Stemming the spread of COVID-19 is unquestionably a compelling [government] interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

*Bayhealth Med. Ctr., Inc.*, Civil Action No. 23-465-RGA, 2024 WL 278209, at *2 (D. Del. Jan. 25, 2024); *Jackson v. Tyson Foods, Inc.*, Case No. 5:23-cv-5102, 2023 WL 9097854, at **3-4 (W.D. Ark. Nov. 27, 2023); "); *DeVore v. Univ. of Ky. Bd. of Trustees*, Case No. 5:22-cv-00186-GFVT-EBA, 2023 WL 6150773, at **3-4 (E.D. Ky. Sept. 20, 2023) (favorably citing *Africa*) *Lucky v. Landmark Med. of Michigan P.C.*, Case No. 23-cv-11004, 2023 WL 7095085, at *6 (E.D. Mich. Oct. 26, 2023) (observing that "the cited cases which rely upon [*Africa*] provide a helpful comparison"); *Stephens v. Legacy-GoHealth Urgent Care*, Case No. 3:23-cv-00206-SB, 2023 WL 7612395, at **5-6 (D. Or. Oct. 23, 2023) (observing that "the *Africa* factors provide useful guidance here. Plaintiff's Opposition brief, by contrast, offers no such citations, nor does Plaintiff attack the reasoning on which these cases were decided. *See generally* Opp'n.

For these reasons, this Court should, as it has for decades, continue applying the *Africa* factors to aid it in evaluating Title VII religious discrimination claims. Applying those factors evenhandedly in this case reveals that Plaintiff has not sufficiently alleged any belief, religious in nature, that is in conflict with Inova's IPP.

### B. The Beliefs Plaintiff Espouses Did Not Conflict with Inova's COVID-19 Vaccination Requirement

Plaintiff now claims she informed Inova of the following "distinct religious beliefs" entitling her to an exemption: "(1) [t]he use of fetal cells in the production of the vaccine is a violation of the sanctity of life; (2) "[d]ivine directives received in prayer are religious beliefs"; and (3) [a]s a 'temple of Holy Spirit,' Mrs. Hoffman cannot put 'Satanic' substances into her physical body." Opp'n at 15-20. None conflicts with Inova's IPP.

Plaintiff claims she objected to being vaccinated because she regards the vaccines as the product of human sacrifice, owing to the "abhorrent methods" of using aborted human fetal cell lines in the development or testing of the vaccines. Opp'n at 16. But she has offered no argument

counter to Inova's assertion that a vaccine that was not developed or tested using these methods was available to her before Inova administratively suspended her clinical privileges. True, she challenges Inova's assertion that she could receive the Novavax COVID-19 vaccine without violating any religious belief proscribing products developed or tested using fetal cell lines, but only by suggesting there are "fact questions" about "whether Novavax could properly accommodate her religious beliefs considering their particularized nature."  Opp'n at 17. Whatever that means, the fact that a vaccine was available that did not implicate fetal cell testing surely satisfied the concerns she actually brought to Inova about the use of cell lines derived from aborted human tissue. Moreover, Inova's IPP specifically approved "any other vaccine authorized for EUA use by the FDA or WHO." ECF No. 13-1 at 5.

Ms. Hoffman also "disputes Defendants' assertion that the Novavax vaccine did not use fetal tissue in its development and/or testing," without an iota of authority or support. This Court has already taken judicial notice of the fact that Novavax was *not* developed using fetal cell lines. *See Ellison*, 2023 WL 6038016, at fn. 10; Alexander Tin, *FDA authorizes Novavax as new alternative to mRNA COVID-19 vaccines* (July 13, 2022), *available at* https://www.cbsnews.com/news/novavax-fda-authorizes-mrna-alternative-covid-19-vaccines/ (citing Novavax spokesperson's confirmation of same). Accordingly, this is a fact that has been "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.[3]

An employer does not have a duty to accommodate employee preferences that are not in conflict with its requirements. *See Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001).

---

[3] Plaintiff cites a wholly irrelevant  article discussing informed consent laws in Australia (not Novavax) and which was published nearly a year before the Novavax vaccine was authorized by the U.S. Food & Drug Administration. Opp'n at 17.

Beyond her objections to vaccine development dependent on testing using fetal cell lines, Plaintiff's asserted beliefs are not fundamentally religious such that she is entitled to accommodation. "Allowing Plaintiff the ability to object to anything that 'go[es] against [his] God-given conscience' would amount to the type of 'blanket privilege' that does not qualify as religious belief…." *Isaacs v. Bayhealth Med. Ctr., Inc.*, Case No. 22-1468-RGA, 2024 U.S. Dist. LEXIS 16784, at \*14 (D. Del. Jan. 31, 2024) (quoting *Africa*, 662 F.2d at 1031)). As did the plaintiffs in *Isaacs*, so here does Ms. Hoffman argue that whether her belief in her conscience threatens the need of the Court to safeguard "ordered liberty" is a matter of sincerity that should be left to the factfinder. Opp'n at 20. However, the *Isaacs* court held that it was proper to consider "this question when dealing with religiosity" at the motion to dismiss stage and noted the numerous other courts that had done the same. *Isaacs* at \*14-15. Courts "can, and must, ensure that a plaintiff's beliefs are religious, as opposed to being 'essentially political, sociological, or philosophical.'" *Aliano v. Twp. of Maplewood*, 22-cv-5598, 2023 U.S. Dist. LEXIS 116652, at \*15 (D.N.J. July 7, 2023) (quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa*, 877 F.3d 487, 490 (3d Cir. 2017)).  To the extent Ms. Hoffman claims a religiously protected right to make her own judgments about receiving the COVID-19 vaccine after prayer, her claims fail.  "Beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in communicating the beliefs." *Foshee v. AstraZeneca Pharms. LP*, Civil No. SAG-23-00894, 2023 WL 6845425, at \*4 (D. Md. Oct. 17, 2023) (collecting cases).

Plaintiff insists that her opposition to the vaccine has nothing to do with concerns about their safety or efficacy. Opp'n at 21. But Ms. Hoffman specifically challenged the efficacy of the vaccines in her submissions to Inova, arguing that breakthrough infections among those who were

vaccinated were expected. ECF No. 1-3 at p. 6. Similarly, Ms. Hoffman now claims her "religious belief involves transcendent conflict among supernatural beings, involving her physical body, with her eternal destiny at stake." Opp'n at 21.  Regardless, she never made such a statement in her exemption requests to Inova, and Plaintiff's counsel's after-the-fact interpretations are irrelevant. When considering her claims, "the Court examines the beliefs Plaintiff pleads she actually **informed Defendant of**."  *Blackwell v. Lehigh Valley Health Network*, Case No. 5:22-cv-03360, 2023 WL 5807840, at *7 (E.D. Pa. Jan. 23, 2023) (emphasis in original). Looking at what Ms. Hoffman **actually told** Inova about her beliefs, she made clear her concerns were about her physical body, absent transcendent conflict between supernatural beings. *See* ECF No. 13-3 at p. 10 ("I am responsible to God for my body – how I treat it, how I use it, how I take care of it, and what I put into it … I am to honor God with my body. It would be dishonoring to God for me to put something into my body for which I had a conscientious objection.").  Those concerns are insufficient as a matter of law.

### III.    Ms. Hoffman Has Failed to State a Claim for Disparate Treatment on the Basis of Religion

#### A.  Plaintiff's Title VII Disparate Treatment Claim in Count II is Duplicative of Her Failure-to-Accommodate Claim in Count I

Plaintiff's attempts to distinguish the theories behind her Title VII claims in Counts I and II only bolster Inova's point that, as pleaded, Count II is duplicative of her Count I for religious discrimination. Opp'n. 24-28.

Inova acknowledges that, as a theoretical matter, a plaintiff could successfully plead separate religious disparate treatment and failure-to-accommodate claims in the same action. Contrary to her assertions, however, the Complaint relies upon the same set of facts to support both claims, and neither set of allegations meets the *Twombly/Iqbal* pleading standard. As such,

the facts alleged are insufficient to support any disparate treatment claim.

The District of Arizona's decision in *Enriquez v. Gemini Motor Transport LP* is instructive in this regard. No. CV-19-04759-PHX-GMS, 2021 U.S. Dist. LEXIS 238796, 2021 WL 5908208 (D. Ariz. Dec. 14, 2021). In *Enriquez*, the court observed, in the abstract, that the plaintiff was "welcome to establish disparate treatment on different facts[.]" 2021 U.S. Dist. LEXIS 238796, at *28; 2021 WL 5908208, at *10. However, the *Enriquez* Court explained, the plaintiff "relie[d] on the same facts to establish disparate treatment as he d[id] for failure to accommodate." *Id.* As such, the plaintiff did not "establish disparate treatment[.]" *Id.*

Plaintiff's disparate treatment claim in this case, like that of Mr. Enriquez, does not rest on any different *facts* from her failure-to-accommodate claim. In both Counts I and II, Plaintiff alleges that she requested an exemption from Inova's COVID-19 vaccination requirement, but that Inova denied that request based on her beliefs. *Compare* Compl. ¶ 51 (Count I) ("Ultimately, Defendants **denied Mrs. Hoffman's request for reasonable accommodation** that would have allowed her to continue to perform her job, and disciplined her by suspending and then terminating her employment, simply because she would not agree to violate her sincerely-held Religious Beliefs.") *with* Compl. ¶¶ 58, 60, (Count II) ("While Inova granted accommodations to certain religious beliefs, it **refused to accommodate**" Plaintiff's beliefs by "**den[ying Plaintiff] an exemption to the Covid-19 Policy** that would have allowed her to continue to perform her job and disciplined her by suspending and then terminating her employment simply because she would not agree to violate her Religious Beliefs.") (emphasis added). "[I']t would be superfluous'" to permit Plaintiff to allege claims under "'Title VII for both failure to accommodate and disparate treatment'" based on the same allegations. *Enriquez*, 2021 WL 5908208, at *10 (quoting *Dykzeul v. Charter Commc'ns, Inc.*, No. CV 18-05826 DSF (GJSx), 2019 WL 8198218, at *10 (C.D. Cal.

Nov. 18, 2019)). Count II, therefore, should be dismissed.

    **B.  Plaintiff Has Not Plausibly Alleged She Was Treated Differently Because of Her Religion**

    The Parties agree that the standard applied to analyze Ms. Hoffman's disparate treatment claims asks whether Ms. Hoffman has pleaded "'[f]actual allegations . . . enough to raise a right to relief above the speculative level.'"  *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 585 (4th Cir. 2015); Inova Mem. at 18; Opp'n at 21; *see also Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (The court's "inquiry is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'") (internal citations omitted).  On this measure, the Complaint falls short.

    Plaintiff's allegations, premised solely on "information and belief" that Inova "'pick[ed] winners and losers' and only grant[ed] exemptions to religious groups preferred by Inova," *i.e.*, those who "came from more prominent religions or held to more conventional beliefs related to religious exemptions to vaccines," do not suffice. Opp'n at 25, 28 (citing Compl. ¶¶ 19, 59). It is axiomatic that "[s]uch conclusory allegations" made "'upon information and belief'" are "'insufficient to defeat a motion to dismiss.'"  *Harman v. Unisys Corp.,* 356 F. App'x 638, 640–41 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 555); *see also Fontell v. McGEO UFCW Local 1994*, Civil Action No. AW-09-2526, 2010 WL 3086498, at *8 (D. Md. Aug. 6, 2010), *aff'd*, 410 F. App'x 645 (4th Cir. 2011) (dismissing Section 1981 claim because, "other than Plaintiff's assertions that '[u]pon information and belief, [Defendants do] not act [in a discriminatory] manner against other (non African American or male) employees…', Plaintiff does not sufficiently allege that [Defendant] had a racial animus[]'"); *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp.3d 521, 528 (D. Md. 2015), *aff'd in part and modified in part*, 659 F. App'x 744 (4th Cir. 2016) ("Conclusory allegations that similar actions were not taken against [other] employees [outside

the plaintiff's protected class] are 'insufficient' to state a discrimination claim."). Rather, to invoke a putative religious discrimination claim, the Complaint must plausibly allege that the decision was made ***because of*** the plaintiff's religion. *See Coleman*, 626 F.3d at 190; Inova's Mem. at 23. Ms. Hoffman's Complaint does not meet this threshold.

People who "'h[o]ld less well-known or respected religious beliefs,'" without any description of what those purportedly lesser known or less respected beliefs are, are not a protected class. Compl. ¶ 59. Nor, for that matter, are "'employees who h[o]ld to conventional beliefs related to religious exemptions to vaccines'" an identifiable group of comparators. *Id.; cf. Savel v. MetroHealth Sys.*, Case No. 22-cv-2154, 2023 WL 4490395, at *8 (N.D. Ohio July 12, 2023) ("Vaccination status is not a class to which Title VII protections apply."). These are conclusory allegations and Plaintiff has not "nudge[d] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 545, 570; *see also Coleman*, 626 F.3d at 190-91 (affirming dismissal of Title VII claim where complaint "conclusorily allege[d] that [plaintiff] was terminated based on his race, [but did] not assert facts establishing the plausibility of that allegation").

Plaintiff's assertion that Inova, by denying her exemption request, "'thereby[] treat[ed] her differently than other employees because of her beliefs,'" also does not suffice. Parroting the legal language of the Fourth Circuit in *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1017 (4th Cir. 1996) (*see* Opp'n at 26) epitomizes the type of "'formulaic recitation of the elements of a cause of action'" that "'will not do'" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *accord Amos v. Lampo Grp., LLC*, No. 3:21-CV-00923, 2023 WL 8631674, at *11 (M.D. Tenn. Dec. 13, 2023) (observing, in the context of a disparate treatment claim arising out of COVID-19 vaccination exemption requirement, that "'Plaintiff must do something more than simply assert a conclusory statement that she was terminated based on her religious beliefs.'")

(internal citation omitted). Again, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Plaintiff's Complaint also makes plain the obvious alternative explanation that her clinical privileges were administratively suspended *not* because of her religious beliefs, but because of her failure to comply with the COVID-19 vaccination requirement in Inova's IPP. Compl. ¶¶ 15, 60, 69, & n.1; *cf. Bing*, 959 F.3d at 617 (affirming dismissal of Title VII claim, in part because plaintiff's pleading "specifically alleged a non-[discriminatory] reason for the termination[,]"; *see also* Inova's Mem. at 24-25. The Fourth Circuit's decision in *Canaan Christian Church v. Montgomery County*, 29 F.4th 182 (4th Cir. 2022), which Plaintiff cites on page 27 of her Opposition, is distinguishable and does not change this outcome. That court's observation that "'a formal mechanism for granting exceptions renders a policy not generally applicable'" was made in the context of deciding the appropriate level of scrutiny to apply to a governmental land use regulation in a RLUIPA lawsuit. 29 F.4th at 198 (quoting *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1879 (2021)). Plaintiff's Opposition ignores the several post-*Fulton* cases involving private employers where religious disparate treatment claims arising out of uniform COVID-19 vaccination policy requirements have been dismissed. *See* Inova's Mem. at 23-24. Likewise, Inova's IPP offered exemptions only as required by another law (in this case, the CMS Mandate and Title VII) and was otherwise generally applicable.[4] For all these reasons, her disparate treatment claims fail.

---

[4] Moreover, the Inova Policy, though influenced by the CMS Mandate, is a private employer policy for which the tiered levels of constitutional scrutiny are inapplicable.

IV.    **Ms. Hoffman's Disability Discrimination Claims Should Be Dismissed**

   A.  **Plaintiff's Purported Disability Did Not Prevent her from Receiving the COVID-19 Vaccine**

Plaintiff attempts to resuscitate her disability failure-to-accommodate claim by arguing, bizarrely, that the CMS Mandate did not limit healthcare facilities from granting medical exemption requests to individuals with conditions other than those listed by the CDC. Opp'n at 21-22. As discussed in Inova's opening brief (Inova Mem. at 21) the CMS Mandate is quite clear: Healthcare providers were required by the regulation to "refer to the CDC informational document, Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States" for "recognized clinical contraindications to receiving a COVID-19 vaccine…." 86 Fed. Reg. at 61572. *See also* Opp'n at 22. Plaintiff nevertheless argues this clear directive by the CMS Mandate was neither "mandatory" nor "exhaustive," without a single authority supporting this proposition. *Id.*  In any event, she is mistaken.

At the same time, Plaintiff argues that her medical condition does meet the CMS/CDC criteria for a medical exemption because the CDC "cautioned" individuals who have experienced an "allergic reaction to any other vaccine or injectable therapy." Opp'n at 22. But the section cited by Plaintiff does not recognize a contraindication in those circumstances, only a CDC "precaution." *See* CDC, *Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States*, Internet Archive, *available at* https://web.archive.org/web/20211216172811/https://www.cdc.gov/vaccines/covid-19/downloads/summary-interim-clinical-considerations.pdf (showing the information available on Dec. 16, 2021). Moreover, neither Ms. Hoffman nor her healthcare provider *ever* alleged she had an allergic reaction to any prior vaccine and in fact the word "allergy" never appears in her medical exemption request. *See generally* ECF No. 13-3. Nowhere

does the CDC list dysautonomia or its symptoms as contraindicating COVID-19 vaccination.[5]

Ms. Hoffman likewise cannot avoid dismissal of her disability discrimination claim by misstating what her healthcare provider wrote. The document speaks for itself, and it states only that Ms. Hoffman *might* experience a non-anaphylactic reaction to the administration of the vaccine, a risk not considered serious enough to cause the CDC (and, by extension, CMS) to consider the vaccine contraindicated. *See* Inova Mem. at 22, ECF No. 13-3.

## B. Ms. Hoffman Does Not Contest Inova's Motion Argument that Counts V and VI Should be Dismissed

In its opening brief, Inova argued Ms. Hoffman has failed to state a disparate treatment claim on the basis of her disability (Counts V and VI). *See* Inova Mem. at 22-23, 26-27. Ms. Hoffman's Opposition brief does not contest Inova's substantive arguments. *See generally* Opp'n. As such, she has conceded these arguments. *See, e.g.*, *Prince v. Library Co. of the Balt. Bar*, Case No. 1:23-cv-00362, 2023 WL 3847430, at *6 (D. Md. June 6, 2023) ("The Plaintiff's failure to respond to the Defendants' arguments" in "support of dismissal" of her claims "should be deemed to have conceded [] these arguments.") (collecting cases). Counts V and VI should be dismissed.

## C. Ms. Hoffman's State Law Disability Claim is Time-Barred[6]

Ms. Hoffman contends that Inova misconstrues the law as to the timeliness of her Virginia

---

[5] In fact, at that time the Dysautonomia Project, which describes itself as the global leader in dysautonomia education, advised "There is increasing evidence that POTS can be triggered by or worsened by a COVID-19 infection, therefore we suggest all individuals with POTS or other autonomic disorders work diligently with their physician(s) to seek vaccination."  April 26, 2021 COVID Vaccine Statement, https://thedysautonomiaproject.org/covid-vaccine-statement/ (last viewed Feb. 14, 2024).

[6] Inova has reviewed Ms. Hoffman's Amendment to her EEOC Charge, which was never sent to Inova by the agency and concedes Ms. Hoffman took steps to exhaust her administrative remedies as to her suspension of privileges and alleged wrongful termination.  *See* Hairston, at 9-10 ("If the VOCR failed to perform its statutory duties, that failure does not act to bar Hairston from this court… Such agency inaction violates the letter and spirit of the law and is antithetical to the administration of justice.")

state law disability discrimination charge. Opp'n at 7-9. It is she, not Inova, who is mistaken.

Ms. Hoffman is correct that where a state has a state or local fair employment practices law similar to the ADA and an agency charged with investigating allegations of discrimination under that law, the deadline to file a federal claim of discrimination *under the ADA* is extended from 180 to 300 days. 29 C.F.R. § 1601.13(a)(4)(ii)(A)-(B). That provision does not, however, preempt the statutorily prescribed filing deadlines under the applicable *state* law, which, for the VHRA, is 180 days. Va. Code Ann. § 2.2-522 ("Complaints under this article shall be filed with the Office [of Civil Rights] within 180 days of the alleged discriminatory event.").

Ms. Hoffman cites a variety of case law to support her contention she had 300 days to file her disability discrimination claim under the VHRA. *See* Opp'n at 7-8. None of it is apposite because all of the cited cases addressed the timeliness of claims brought pursuant to a *federal* law, not a state law. Inova agrees that had Ms. Hoffman filed her disability discrimination Charge with the EEOC within 180 days of the events she complains of, she would not have had to also file a charge with the VOCR in order for her VHRA claim to be deemed timely. *See* Opp'n at 7 (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 440 (4th Cir. 1998)). That is not the case here.

Inova also agrees Ms. Hoffman had 300 days in which to file her ADA claim of discrimination. Opp'n at 7-8 (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292 (4th Cir. 2004); *Venkatraman v. REI Sys.*, 417 F.3d 418, 420 (4th Cir. 2005)). The same rule, however, does not apply in the inverse, as the VHRA explicitly requires state-law disability discrimination claims to be brought within 180 days of the challenged employment action. *Compare* 42 U.S.C. §§ 2000e-5(b), I(1), (f)(1), *with* Va. Code Ann. § 2.2-3907; *see also Tattrie v. CEI-Roanoke, LLC*, Case No. 7:23-cv-079, 2023 U.S. Dist. LEXIS 109674, at *6 (W.D. Va. June 20, 2023).

Ms. Hoffman further contends that the time for her to file her Charge runs not from the

denial of her medical exemption request but, rather, from the date she was notified that her credentials with Inova had been suspended. Opp'n at 8. Even if this were correct, it does not save Count VI because the Opposition avers she complained of Inova's decision to suspend her Medical Staff credentials by amending her Charge on March 30, 2023. *Id.* at 5. That date is well outside of the 180-day period starting August 1, 2022 (*i.e.*, the date her clinical privileges were suspended) in which she could make a claim under the VHRA. *See* Compl. ¶ 29.

Finally, Ms. Hoffman contends her failure to exhaust is irrelevant because Virginia does not "recognize the exhaustion of a complaint" before she can bring "a civil action in a Virginia state court." Opp'n at 8 (quoting *Parikh-Chopra v. Strategic Mgmt. Servs., LLC*, 109 Va. Cir. 155, 156 (2021)). Ms. Hoffman misstates the thrust of that decision, which specifically addressed a "civil action in a *Virginia state court*." *Id.* (emphasis added). Moreover, *this* Court has been clear that since the 2020 amendments to the VHRA, that law has an "extensive remedial scheme that employees must follow…." *Hice v. Mazzella Lifting Techs. Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022). As part of this remedial scheme, "to bring an employment discrimination claim under the [VHRA], a person had to file a complaint with the [VOCR]." *Id.* (citing Va. Code Ann. § 2.2-3907(A) (2020)); *see also Hairston v. Nilit America Inc.,* Case No. 4:3-cv-00011, 2023 WL 8011089 (W.D. Va. Nov. 20, 2023) ("[L]ike Title VII requires exhaustion with the EEOC, the VHRA requires exhaustion of available remedies with the VOCR prior to filing suit.")

## V.    CONCLUSION

For the foregoing reasons, and the reasons set forth in its opening Memorandum of Law, Inova respectfully requests that the Court enter an Order granting its Motion to Dismiss, dismissing the Complaint with prejudice, and awarding Inova such other relief as the Court deems just and proper.

Dated: February 15, 2024

Respectfully submitted,

*/s/ Nancy N. Delogu*

Nancy N. Delogu (VSB No. 37826)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue NW
Suite 400
Washington, DC 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011
nndelogu@littler.com

Alexander P. Berg (VSB No. 95557)
Lauren M. Bridenbaugh (VSB No. 90586)
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard
Suite 500
Tysons Corner, VA 22102
Telephone: 703.442.8425
Facsimile: 703.442.8428
aberg@littler.com
lbridenbaugh@littler.com

*Counsel for Defendant*
*Inova Health Care Services*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 15th day of February 2024, I caused a copy of the foregoing

**Inova's Reply to Plaintiff's Opposition to Inova's Motion to Dismiss**, to be served through the

Court's Electronic Case Filing (ECF) system on the following counsel of record:

> Timothy P. Bosson, Esq. (VSB No. 72746)
> Isaiah R. Kalinowski, Esq. (VSB No. 71125)
> Aire M. Jones, Esq. (VSB No. 98248)
> BOSSON LEGAL GROUP, PC
> 8300 Arlington Blvd., Suite B2
> Fairfax, VA 22031
> tbosson@bossonlaw.com
> ikalinowski@bossonlaw.com
> ajones@bossonlaw.com
> Telephone: (571) 775-2529
>
> *Counsel for Plaintiff*

*/s/ Nancy N. Delogu*
Nancy N. Delogu