IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KELLY HOFFMAN, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) Case No. 1:23-cv-01696 |
| INOVA HEALTH CARE SERVICES, | ) ) ) |
| AND | ) ) |
| NORTH AMERICAN PARTNERS IN ANESTHESIA, LLC, | ) ) ) ) |
| *Defendants*. | ) |

**REPLY BRIEF IN SUPPORT OF NORTH AMERICAN PARTNERS IN ANESTHESIA, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT[1]**

This Court should reject each of the perfunctory challenges to Defendant North American Partners in Anesthesia, LLC's ("NAPA") Motion to Dismiss raised in Plaintiff Kelly Hoffman's ("Plaintiff" or "Hoffman") Opposition to NAPA's Motion to Dismiss (the "Opposition"). (ECF No. 18.) As confirmed below, Plaintiff's arguments are insufficient to overcome the glaring legal defects and factual deficiencies on the face of the Complaint. As an initial matter, Plaintiff's Opposition fails to identify any binding authority that excuses her failure to satisfy the administrative exhaustion requirements for her federal and state claims. Furthermore, the Opposition fails to address the lack of factual allegations in Plaintiff's Complaint showing that NAPA had any involvement in Defendant Inova Health Care Services' ("Inova") alleged discrimination of and failure to accommodate Plaintiff. Indeed, Plaintiff's allegations and the

---

[1] NAPA adopts and incorporates by reference any arguments raised in Defendant Inova Health Care Services' Motion to Dismiss to the extent any are applicable to Plaintiff's claims against NAPA.

authentic documents that are integral to those allegations demonstrate that Plaintiff failed to pursue alternative work arrangements that would have allowed her to continue her employment with NAPA. Ultimately, Plaintiff's Complaint is plagued by procedural defects and factual and legal deficiencies that cannot be cured through reliance on the non-binding and outdated case law cited in her Opposition. Accordingly and for the reasons set forth in Defendant's initial memorandum, this Court should grant NAPA's Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety.

## REBUTTAL ARGUMENT

### A. Plaintiff's failure to properly amend her Charge of Discrimination to include NAPA bars her federal and state claims.[2]

Plaintiff's Opposition fails to identify controlling case law that excuses her failure to exhaust her administrative remedies under federal and state law. The Opposition cites to a single state court case and several cases from outside of the Fourth Circuit to urge this Court to find: (1) that the Virginia Human Rights Act ("VHRA") does not require exhaustion of Plaintiff's administrative remedies to pursue her state law claims and (2) that Plaintiff's failure to effectively amend her Charge of Discrimination ("Charge") to the Equal Employment Opportunity Commission ("EEOC") and obtain a Notice of Right to Sue that identifies NAPA should not affect her federal claims. (Pl.'s Opp'n. at 6-7, citing to cases from the Fifth and Sixth Circuits and

---

[2] NAPA maintains that the issue raised in its Motion to Dismiss may be addressed under Fed. R. Civ. P. 12(b)(6). However, to the extent necessary and to serve the interests of judicial efficiency, the Court may consider any additional exhibits and facts required to dismiss Plaintiff's claims with prejudice under Fed. R. Civ. P. 12(b)(1). "[A] Rule 12(b)(1) motion may [] challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. In such a case, because a party challenges the court's 'very power to hear the case,' the trial court is free to weigh evidence to determine the existence of jurisdiction. '[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Shannon v. City of Richmond Virginia Sheriff's Off.*, No. 3:22CV460, 2023 WL 2720806, at *4 (E.D. Va. Mar. 30, 2023).

Virginia state court.) In doing so, Plaintiff invites this Court to ignore well-reasoned decisions from courts within the Fourth Circuit, finding that these same defects are fatal to a claim of discrimination under state and federal law.

As an initial matter, federal courts in Virginia have repeatedly and consistently interpreted the administrative exhaustion requirements to apply to federal claims under Title VII and the ADA **and** state claims under the VHRA. For example, in *Hairston v. Nilit Am., Inc.*, No. 4:23-CV-00011, 2023 WL 8011089, at *3 (W.D. Va. Nov. 20, 2023), a court in the Western District of Virginia recently emphasized the nearly-identical requirements for administrative exhaustion under Title VII and the VHRA:

> The Virginia Human Rights Act ("VHRA")—Virginia's analogue to Title VII— prohibits employment discrimination. And like Title VII requires exhaustion with the EEOC, the VHRA requires exhaustion of available remedies with the [Virginia Office of Civil Rights ("OCR")] prior to filing suit. Compare 42 U.S.C. § 2000e-5(b), (e)(1), (f)(1), with Va. Code Ann. § 2.2-3907. After receiving a charge, the agencies must notify the employer and investigate the allegations. 42 U.S.C. § 2000e-5(b); Va. Code Ann. § 2.2-3907(B). "A complainant is generally entitled to a right-to-sue notice from the agency with which the complaint was filed 180 days after filing." *Tattrie v. CEI-Roanoke, LLC*, No. 7:23-cv-079, 2023 WL 4186383, at *2 (W.D. Va. June 26, 2023) (citing 42 U.S.C. § 2000e-5(f)(1); Va. Code Ann. § 2.2-3907(H); 1 Va. Admin. Code § 45-20-87). A party must receive a right-to-sue letter from the EEOC to pursue federal claims, and it must receive a separate right-to-sue from the VOCR to pursue state-law claims.

*Id*. (citations omitted and alterations made to original). As stated above, the requirements for pursuing a civil action under Title VII, the ADA, and the VHRA are clear and unequivocal. Those requirements mandate that NAPA receive proper notification of Plaintiff's allegations against it and that the EEOC **and** VHRA issue a right to sue authorizing Plaintiff to pursue civil claims against NAPA. Plaintiff does not dispute that neither of these events occurred prior to the filing of this action.

3

Plaintiff's reliance on *Moore v. Copper River Shared Servs.*, LLC, No. CL-2023-9565, 2024 Va. Cir. LEXIS 10, at *1 (Fairfax Cir. Ct. Jan. 30, 2024) fails to justify ignoring the Fourth Circuit's interpretation of the pre-filing requirements for claims under the ADA, Title VII, and the VHRA. In fact, the decision in *Moore* not only diverges from the Fourth Circuit's authority on the issue, the case also conflicts with rulings from other judges in Fairfax County Circuit Court. For instance, in *Parikh-Chopra v. Strategic Mgmt. Servs., LLC*, 109 Va. Cir. 155 (Fairfax Cir. Ct. December 9, 2021), a different Fairfax County Circuit Court Judge stated emphatically that: "It is only when a complainant's administrative remedies have been exhausted under [the VHRA] before a state agency that a lawsuit can [be] filed following the issuance of a notice of the right to file a civil action. The critical procedural fact is receipt of the notice of a right to sue." *Id*. at *2 (citations omitted and alterations made to original). Because Plaintiff's claim that administrative exhaustion is not required under the VHRA is unsupported by any binding precedent and appears based on a single divergent Virginia Circuit Court case, this Court should continue to interpret the VHRA, Title VII, and the ADA to require exhaustion of Plaintiff's administrative remedies before pursuing her federal and state law claims.

Plaintiff's plea for this Court excuse her failure to effectively amend her EEOC Charge and obtain a Right to Sue identifying NAPA fares no better. In *Shannon v. City of Richmond Virginia Sheriff's Off.*, No. 3:22CV460, 2023 WL 2720806 (E.D. Va. Mar. 30, 2023), the plaintiff argued that he satisfied the requirements for administrative exhaustion because "after he filed his charge, but before the EEOC issued its final determination, he 'notif[ied] the EEOC investigator [by email] . . . of additional acts of discrimination arising out of the original charge.'" *Id*. at *9. Another division in this Court rejected this argument, emphasizing that the "Fourth Circuit has established that, in evaluating a plaintiff's post-charge communications with the EEOC, **it is**

4

**'objectively illogical to a view private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it.'**" *Id*. citing *Sloop v. Memorial Mission Hosp. Inc.*, 198 F.3d 147, 149 (4th Cir. 1999); *Cowgill v. First Data Tech.*, Inc., 41 F.4th 370, 385 (4th Cir. 2022) (emphasis added).

Plaintiff attempts unsuccessfully to downplay the significance of the proper amendment of her Charge to identify the proper employer by citing various cases that presume an employer's receipt of a Charge and/or Right to Sue **where there is no dispute that the employer was properly named in those documents**. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (presuming that employer received notice of Charge of Discrimination where there was no dispute that employer was named in the Charge of Discrimination and Right to Sue); *Equal Emp. Opportunity Comm'n v. Gen. Elec. Co.*, 532 F.2d 359, 365 (4th Cir. 1976) (addressing the EEOC's ability to investigate and pursue additional allegations of discrimination against an already named employer without the filing of a new Charge of Discrimination specifically alleging that discrimination); *Billups v. Clinch Valley Med. Ctr.*, No. 1:19CV00047, 2021 WL 1015826, at *2 (W.D. Va. Mar. 16, 2021) (rejecting employer's argument that it did not receive a copy of Charge of Discrimination where the employer's attorney was clearly identified as the recipient); *Jordan v. Open MRI of Dallas LLC*, No. 3:19-CV-2269-S, 2020 WL 3405233, at *3 (N.D. Tex. June 18, 2020) (presuming receipt of Charge of Discrimination in evaluating claims of retaliation based on the same where there was no allegation or indication that the employer was not properly identified in the Charge of Discrimination); *Rhines v. Salinas Const. Techs., Ltd.*, No. CIV.A. C-11-262, 2012 WL 3249532, at *7 (S.D. Tex. Aug. 7, 2012) (same); *Johnson v. David Wade Corr. Ctr.*, No. CIV. 08-0903, 2010 WL 1688435,

at *6 (W.D. La. Apr. 23, 2010) (same); *Simms v. D.C.*, 699 F. Supp. 2d 217, 228 (D.D.C. 2010) (evaluating the plaintiff's ability to file suit without a Right to Sue based on the EEOC's failure to act on her complaint within 180 days of filing). All of the cases relied on in Plaintiff's Opposition are distinguishable on their facts or not binding on this Court.

Here, Plaintiff's private (unsigned) letter to the EEOC requesting amendment of her EEOC Charge to identify NAPA fails in the same essential way as the letter in *Shannon* – the letter fails to effectively amend her Charge and deprived NAPA of any notice of the claims raised against it. (*See* Pl.'s Opp'n. at Ex. 1, ECF No. 18-1.) Indeed, it was Plaintiff's responsibility to ensure that her Charge was properly amended and her failure to do so precludes her claims against NAPA.

The formal process for filing an amended charge is no more complicated than formal processes for filing an initial charge with the EEOC, filing intake forms with OCR, or requesting a Right to Sue notice from OCR—all processes that Plaintiff navigated without issue. Significantly, Plaintiff does not dispute that the Right to Sue notices issued by the EEOC and OCR only identify Defendant Inova Health Care Services ("Inova") as the charged employer. (*See* ECF No. 11-3 at 2-3 (OCR Right to Sue) and 20-24 (EEOC Right to Sue).) Even in the light most favorable to Plaintiff, she could have addressed the issue at that point and certainly before filing suit. But she did not. Instead, Plaintiff's first and only attempt to address the issue comes in response to a dispositive motion. As a result, this Court should not excuse Plaintiff's neglect to ensure that she satisfied the basic prerequisite requirements for filing a federal lawsuit.

Ultimately, Plaintiff cannot allege that NAPA received proper notice and an opportunity to respond to her allegations to the EEOC and OCR, or that NAPA received any notice of the closure of either investigation. If NAPA had the opportunity to respond to Plaintiff's allegations at the administrative level, its response would have emphasized to Plaintiff that her failure to pursue the

alternative work arrangements offered is fatal to her current claims. While there is no guarantee that Plaintiff would have refrained from filing suit if NAPA had the benefit of including this information in a formal position statement to the EEOC, NAPA still should have the opportunity to respond to her allegations at the administrative level—and before incurring the expenses of defending against a meritless federal lawsuit. Accordingly, this Court should grant NAPA's Motion to Dismiss with prejudice.

### B. The authorities cited in Plaintiff's Opposition confirm that NAPA cannot be liable "for Inova's [alleged] discriminatory acts."

Plaintiff's Opposition contends that NAPA is liable for Inova's alleged discriminatory acts because (1) it "participate[ed] in discriminatory conduct by terminating Ms. Hoffman in conjunction with Inova's request, (2) failed to take corrective measures after being placed on notice of Inova's discriminatory conduct." (Pl.'s Opp'n at 8.) As support, Plaintiff cites a case from the United States District Court for the Middle District of North Carolina – *Brief-Mcgurrin v. Cisco Sys.* – and repackages all the internal citation therein, for the general position that a staffing agency may be held liable for employment discrimination in violation of Title VII "'by directly discriminating against an employee through their own actions, or by failing to take corrective action to remedy discrimination by a co-employer about which they knew or should have known.'" (Pl.'s Opp'n at 8 (*Brief-Mcgurrin*, No. 1:18-cv-131, 2019 U.S. Dist. LEXIS 48661, at *6 (M.D.N.C. March 25, 2019) (internal citation and quotations omitted).)

As an initial matter, *Brief-Mcgurrin* did not involve a motion to dismiss case under Fed. R. Civ. P. 12(b)(6), which may explain why Plaintiff believes that citing three conclusory paragraphs in the Complaint as additional support somehow substantiates her argument. (Pl.'s Opp'n at 8 (citing Compl., ECF No. 1, at ¶¶ 36, 50-51).)

7

| Paragraph 36 | Paragraph 50 | Paragraph 51 |
|---|---|---|
| Without the ability to provide anesthesiology services to Inova, Mrs. Hoffman's employment with NAPA was a dead letter. Ultimately, NAPA terminated Mrs. Hoffman's employment on September 29, 2022 | NAPA was complicit and acquiesced to Inova's determination, and ultimately terminated Plaintiff's employment in conjunction with Inova's request. | Ultimately, Defendants denied Mrs. Hoffman's request for reasonable accommodation that would have allowed her to continue to perform her job, and disciplined her by suspending and then terminating her employment, simply because she would not agree to violate her sincerely-held Religious Beliefs. |

From a pleading standpoint, "although [courts] must accept the truthfulness of all factual allegations, [they] need not assume the veracity of legal conclusions" pleaded as facts. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This underscores the primary defect in Plaintiff's Opposition: it does not identify facts in the Complaint to support that NAPA violated any law by discriminating against her through its actions, nor that it failed to take "corrective measures within *its* control." *Brief-Mcgurrin*, 2019 LEXIS 48661, at *6 (citing *Butler v. Drive Auto. Indus. Of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015)).

As previously argued in NAPA's initial memorandum, the Complaint does not contain any facts to support that Inova's COVID-19 mandate was a requirement of her employment with NAPA, nor facts to support that NAPA was involved in the implementation or enforcement of Inova's policy. On this basis alone, the Court can and should reject Plaintiff's argument that NAPA discriminated against her through its own actions.

Moreover, despite Plaintiff's subjective belief that her "employment with NAPA was a dead letter," the pleading record is clear that Plaintiff's Employment Agreement with NAPA did not have an exclusivity clause requiring Plaintiff only to provide anesthesiology services at Inova facilities. (Compl. at ¶ 2.) While Plaintiff would prefer that the Court ignore her emails (ECF No.

8

11-4) declining work at non-Inova facilities proposed by NAPA, this Court can and should consider the emails as integral to the Complaint. *See Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (internal citation and quotations omitted) (explaining that even at this early stage of litigation, courts are not required to make "unreasonable inferences … [n]or "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").[3] Indeed, they confirm NAPA cannot be liable for discrimination because it took corrective measures within its control after Plaintiff complained about Inova's decision to deny her requested accommodations to be exempted from Inova's COVID-19 vaccination policy.

To the extent Plaintiff's Opposition hopes to double down on the legal conclusions pleaded in the Complaint by arguing that NAPA "[d]utifully following marching orders, terminated Plaintiff on September 29, 2022 … 'in conjunction with Inova's request[,]'" (Pl.'s Opp'n at 8 (citing Compl. at ¶ 50).) arriving at this desired conclusion requires building inference upon inference which are simply not supported by the facts in the Complaint. First, Plaintiff has not alleged (and cannot allege) that Inova asked NAPA to terminate Plaintiff—it did not. Instead, it is clear from the Complaint that almost seven months after denying Plaintiff's requested accommodation, Inova set a deadline for Plaintiff's privileges at its facilities to expire if she was not vaccinated against COVID-19. (Compl. at ¶¶ 23, 34-35.)

---

[3] While Plaintiff challenges the emails as inauthentic because they are "cherry-picked," she has not (and cannot) challenge the content of the emails as inauthentic—because they are authentic. Moreover, Plaintiff appears to misconstrue the law regarding when a document is "integral to and expressly relied on in a complaint." Here, it is axiomatic but worth noting nonetheless that emails between NAPA and Plaintiff regarding NAPA's response to her complaints about Inova's alleged discrimination are the very essence of her current claims. Indeed, "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint . . . not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiff's claims." *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

Next, a simple chronology confirms that NAPA began suggesting alternate facilities to Plaintiff as early December 2021, which was before Inova denied Plaintiff's initial accommodation requests in January 2022. (*Compare* ECF No. 11-4 at 1, *with* Compl. at ¶ 23.) In addition, NAPA continued its efforts to find Plaintiff a suitable alternative in May 2022 in the event that Inova denied Plaintiff's renewed accommodation requests submitted in April 2022. (*Compare* ECF No. 11-4 at 2, *with* Compl. at ¶ 31.) Ultimately, the only plausible inference concerning Plaintiff's eventual termination in September 2022 is that it was the result of Plaintiff's refusal to work at several non-Inova facilities proposed by NAPA because she would not work anywhere but Inova, which was no longer possible based on Inova's decision to suspend Plaintiff's privileges on August 1, 2022, for non-compliance with Inova's COVID-19 vaccination requirement. (*See* Compl. at ¶ 35.)

Even in the light most favorable to Plaintiff, NAPA could not force Plaintiff to work at a non-Inova facility if she did not want to do so. To the extent Plaintiff hopes to prolong this undeniable reality beyond the pleading stage, she has not alleged (and cannot allege) plausible facts to support that NAPA could be liable for alleged violations of Title VII, the VHRA, or the ADA by failing to take corrective measures within its control. And, Plaintiff's Opposition does not identify facts to support otherwise—to the contrary, the Opposition underscores that NAPA did exactly what it was supposed to do to avoid liability in this case.

Setting aside the self-defeating arguments in Plaintiff's Opposition, it is clear from the face of the Complaint that NAPA should be dismissed from this case because Plaintiff's allegations are nothing more than a threadbare recital of conclusory statements that NAPA is liable for discrimination. Without more, it is clear that Plaintiff cannot satisfy *Twombly*'s plausibility standard, which requires pleadings to provide facts that demonstrate an "actual showing that [she]

is entitled to relief," thereby creating an inference that NAPA is liable under the law for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

C. **Although NAPA was not "aware of" Plaintiff's alleged disability, Plaintiff's Opposition does not identify facts in the Complaint to support the other threshold elements necessary to assert an ADA claim or any other type of discrimination claim against NAPA.**

Plaintiff cites dicta from *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 584 (4th Cir. 2015) for the limited position that "[a] *prima facie* case is 'an evidentiary standard, not a pleading requirement,' and hence not a proper measure of whether a complaint fails to state a claim." (Pl.'s Opp'n at 13.) However, this narrow proposition fails to fully appreciate the Fourth Circuit's holding in that case. As noted therein, the Supreme Court in *Swierkiewicz*, applied a different pleading standard in 2002 than what is now required under *Twombly* and *Iqbal*, which were issued in 2007 and 2009 respectively, and "which did alter the criteria for assessing the sufficiency of a complaint…" *McCleary-Evans v. Md. DOT*, 780 F.3d at 586.

Applying the proper pleading standard and recognizing that Plaintiff is not charged with proving a *prima facie* case to survive a motion to dismiss, a complaint's factual allegations must nonetheless be enough to raise a right of relief above the speculative level. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002); *see also Twombly*, 550 U.S. at 555)); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009) ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted). In other words, the Supreme Court's holding in *Swierkiewicz* "left untouched the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (internal quotation marks omitted).

11

As previously argued in NAPA's initial memorandum, to allege a *prima facie* claim of disparate treatment under Title VII, the ADA or the VHRA that raises a right of relief above the speculative level, Plaintiff must include facts that **support the following elements**: (1) she was a member of a protected class; (2) she experienced an adverse employment action; (3) at the time of the adverse action, she met NAPA's legitimate expectations; and (4) similarly-situated employees were treated more favorably under similar circumstances. *See White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2014); *Terrill v. Chao*, 31 F. App'x 99, 100 (4th Cir. 2002); *see also See Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (applying *McDonnell Douglas* standard to ADA claims); *Sunkins v. Hampton Roads Connector Partners*, __ F.Supp.3d __, 2023 WL 7411761, at *6 (E.D. Va. 2023) (applying *McDonnell Douglas* standard to VHRA claims).

Like her misplaced reliance on *McCleary-Evans*, Plaintiff's arguments depend on dated precedent from before *Twombly* and *Iqbal* – e.g., *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1017 (4th Cir. 1996) and *Moore v. Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985). In addition to predating *Twombly* and *Iqbal*, these cases predate *Haywood v. Locke* and its progeny, which is the law in the Fourth Circuit on what types of facts are needed to support disparate treatment claims. Plaintiff's Opposition ignores these binding authorities, and in doing so, fails to understand that while courts do not require a plaintiff to establish a similarly-situated comparator to succeed on all types of discrimination claims, *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F. 3d 536, 545 (4th Cir. 2003), when a plaintiff's allegations—as is the case here—are based "completely upon a comparison to an employee from a non-protected class . . . the validity of [the plaintiff's] *prima facie* case depends upon whether that comparator is indeed similarly situated." *Thomas v. City of Annapolis*, 851 F. App'x 341, 347 (4th Cir. 2021) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)

12

(explaining that a plaintiff needs to support that she and a comparator "were subject to the same standards and *engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal citations and quotations omitted); *see also Cook v. Prince George Cty. Sch. Bd.*, No. 3:22-cv-129, 2023 WL 2250479, at *8 (E.D. Va. Feb. 27, 2023) (J., Hudson) (internal citations and quotations omitted) (emphasis in original) (explaining that a plaintiff must also support that she was treated more favorably than she was "*with respect to the adverse action complained of*").

On this element alone, Plaintiff's disparate treatment claims fail with respect to NAPA. It is clear from the Complaint that Inova's COVID-19 vaccination policy required all of Inova's "employees and contracted workers" to be vaccinated against COVID-19 unless they qualified for an exemption. (Compl. at ¶ 15.) Moreover, as noted above, the Complaint does not contain any facts to support that Inova's COVID-19 mandate was a requirement of her employment with NAPA. This alone precludes Plaintiff from showing that NAPA treated one of its employees who provided services at Inova's facilities more favorably than her based on religion or an alleged disability because those NAPA employees would also be required to follow Inova's policies and guidelines to maintain privileges at an Inova facility. In addition, because the Complaint fails to allege facts to support that NAPA was involved in the implementation or enforcement of Inova's COVID-19 policy, Plaintiff cannot allege disparate treatment based on Inova's Committee's favorable treatment of another **NAPA** employee. Any allegation to that effect would only support Plaintiff's alleged claims of disparate treatment by Inova, rather than by NAPA.

Without more, Plaintiff's disparate treatment claims must be dismissed because NAPA cannot be liable for alleged discrimination by Inova. Therefore, and for the reasons stated in its initial memorandum, Counts II, III, and V pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state

13

a factually plausible or legally cognizable disparate treatment claim against NAPA under Title VII, the VHRA, or the ADA.

    **D. Plaintiff's Opposition does not identify facts in the <u>Complaint to support a failure to accommodate claim under any theory.</u>**

Plaintiff's recycled arguments that NAPA is liable for Inova's alleged discriminatory acts because: (1) it "participate[ed] in discriminatory conduct by terminating Ms. Hoffman in conjunction with Inova's request, (2) and [] failed to take corrective measures after being placed on notice of Inova's discriminatory conduct" are insufficient to stave off dismissal of her failure to accommodate claims.

To establish a failure to accommodate claim under Title VII or the VHRA, Plaintiff must allege facts to support (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting requirement. *U.S. EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017). Similarly, to establish a failure to accommodate claim under the ADA, Plaintiff must support that she: (1) was an individual who had a disability within the meaning of the statute; (2) that NAPA had notice of her disability; (3) with or without a reasonable accommodation she could perform the essential functions of the position; and (4) NAPA refused to make such accommodation(s). *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

As noted above and argued in NAPA's initial memorandum, Plaintiff has not alleged facts to support that NAPA disciplined her for failing to comply with Inova's COVID-19 vaccination requirement, nor facts that could support that NAPA refused to make an accommodation for her that would allow her to continue working at Inova. Instead, Plaintiff's Complaint and the authentic documents that are integral to her allegations demonstrate that she refused alternative reasonable accommodations offered by NAPA. Indeed, "[t]he ADA does not provide an all-inclusive

14

definition of the term 'reasonable accommodation. Instead, it provides examples of what a "reasonable accommodation' *may* include," like "job restructuring, part-time or modified work schedules, reassignment to a vacant position and other similar accommodations." *Tartaro-McGowan v. Inova Home Health, LLC*, __ F.4th __, No. 22-1825, 2024 WL 174357, at *6 (4th Cir. Jan. 17, 2024) (internal quotations omitted) (citing 42 U.S.C. § 12111(9)(B)). For this reason alone, employers are not "required to 'provid[e] the exact accommodation that the employee requested.'" *Id.* (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015)). "And as long as the employer's chosen accommodation is reasonable, even if not perfect, [the court's] inquiry is at an end—'not even a well-intentioned court may substitute its own judgment for the employer's choice.'" *Id.* (alterations to original).

It is clear that Plaintiff requested that NAPA "discard [her] preapplication" to one of those facilities because she did not believe she would be credentialed in time to accept the alternative position offered. (ECF No. 11-3 at 2.) Indeed, Plaintiff declined NAPA's invitations and proposals to work at one of its other facilities that was not affiliated with Inova, and which did not have a similar COVID-19 vaccination requirement. As such, when Inova terminated Plaintiff's privileges at its facilities, Plaintiff's decision not to accept alternate employment at another facility that NAPA contracted was the cause of her eventual separation—not NAPA's failure to provide a reasonable accommodation.

Therefore, and for the reasons stated in NAPA's initial memorandum, Counts I, III, and IV of the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has not alleged facts to support a factually plausible or legally cognizable failure to accommodate claim under Title VII, the VHRA, or the ADA.

## **CONCLUSION**

Wherefore, and for the foregoing reasons and those stated in its initial memorandum, North American Partners in Anesthesia, LLC, respectfully request this Court to enter an Order granting its Motion to Dismiss and awarding any additional relief deemed appropriate.

Dated: <u>*February 15, 2024*</u>

                                              Respectfully submitted,

                                              NORTH AMERICAN
                                              PARTNERS IN ANESTHESIA, LLC

                                                  /s/ *Scott A. Siegner*
                                              Scott A. Siegner (VSB No. 89570)
                                              scott.siegner@ogleetreedeakins.com
                                              W. Ryan Waddell (VSB No. 91148)
                                              ryan.waddell@ogletreedeakins.com
                                              OGLETREE, DEAKINS, NASH, SMOAK
                                              & STEWART, P.C.
                                              901 East Byrd Street, Suite 1300
                                              Richmond, VA 23219
                                              Tel.:  (804) 663-2342
                                              Fax:  (804) 225-8641

                                              *Counsel for Defendant NAPA*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of February, 2024, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff:

Timothy Paul Bosson (VSB No. 72746)
Isaiah Kalinowski (VSB No. 71125)
BOSSON LEGAL GROUP PC
823 South King Street
Suite Unit C
Leesburg, VA 20175
Phone: 571-438-9513
Fax: 202-380-0486
Email: tbosson@bossonlaw.com
Email: ikalinowski@bossonlaw.com

Arie M. Jones (VSB No 98248)
BOSSON LEGAL GROUP PC
8300 Arlington Blvd, Suite B2
Fairfax, VA 22031
Phone: 571-771-3225
Fax: 571-775-2521
ajones@bossonlaw.com

*Counsel for Plaintiff*

Nancy N. Delogu (VSB No. 37826)
LITTLER MENDELSON, PC
915 Connecticut Ave, NW, Suite 400
Washington, DC 20006-4046
Phone: 202-842-3400
Fax: 202-842-0011
nndelogu@littler.com

Alexander P. Berg (VSB No. 95557)
Lauren M. Bridenbaugh (VSB No. 90586)
LITTLER MENDELSON, PC
1800 Tysons Blvd, Suite 500
Tysons Corner, VA 22101
Phone: 703-442-8425
Fax: 703-442-8428
aberg@littler.com
lbridenbaugh@littler.com

*Counsel for Defendant INOVA Health Care Services*

    /s/ *Scott A. Siegner*

*Counsel for Defendant NAPA*