UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KELLY HOFFMAN,
      *Plaintiff*,

v.

INOVA HEALTH CARE SERVICES,
      *Defendant.*

Case Number 1:23-cv-1696 (MSN/IDD)

### ORDER

This matter comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim Plaintiff's Amended Complaint (ECF 28). Plaintiff Kelly Hoffman is a Certified Registered Nurse Anesthetist ("CRNA") who previously worked at Inova Loudoun Hospital. She brings claims under Title VII, the Americans with Disabilities Act ("ADA") and the Virginia Human Rights Act ("VHRA") alleging that Inova unlawfully discriminated against her after it declined to grant Hoffman an exemption from Inova's COVID-19 vaccine requirement. The Court previously dismissed Plaintiff's complaint because she failed to allege facts sufficient to hold Defendant Inova Health Care Services responsible as her employer. *See* ECF 25-26. Because Plaintiff's Amended Complaint suffers from the same deficiency, the motion will be granted.

**I.**    **BACKGROUND[1]**

Kelly Hoffman is a practicing CRNA. She was hired in 2017 by American Anesthesiology of Virginia. ECF 27 ("First Am. Compl." or "FAC") ¶ 9. In 2020, North American Partners in

---

[1] For purposes of this motion to dismiss, the Court accepts as true all the factual allegations in the First Amended Complaint and draws all reasonable inferences in favor of the Plaintiff. *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012).

1

Anesthesiology ("NAPA") acquired American Anesthesiology of Virginia, and thereafter Hoffman "was contractually an employee of NAPA (through its subsidiary American Anesthesiology of Virginia) … at all relevant times." *Id.*

Through her employment contract with NAPA's subsidiary, Hoffman worked exclusively in Inova facilities. FAC ¶ 10. Hoffman worked at both Inova's Ambulatory Surgery Center and Inova's Loudoun Hospital pursuant to a contractual arrangement between Inova and NAPA's subsidiary. *Id.* ¶ 11. Inova "exercised oversight over" Hoffman's work (*id.* ¶ 15), "set and monitored" her work schedule (*id.* ¶ 18), and "was indistinguishable from other nurse employees of Inova" (*id.* ¶ 19).

In July 2021, Inova instituted a COVID-19 vaccine policy (the "Medical Staff Policy"), which required all medical staff, including credentialed advanced practice providers like Hoffman, to document that they had received a COVID-19 vaccine. FAC ¶ 26; ECF 29 ("Def. Mot.") Ex. 2. The Medical Staff Policy also set forth procedures to request a medical or religious exemption. FAC ¶ 27; Def. Mot. Ex. 2 at 5-7. That same month, Hoffman requested, and was granted, a medical exemption. FAC ¶ 32.

On November 5, 2021, the Centers for Medicare and Medicaid Services ("CMS") issued an interim final rule ("CMS Mandate") that required most hospital staff to receive the COVID-19 vaccine. 86 Fed. Reg. 61,555 (Nov. 5, 2021). Finding that vaccination of healthcare workers against COVID-19 is "necessary for the health and safety of individuals to whom care and services are furnished," and that staff who are unvaccinated "pose a serious threat to the health and safety of patients," CMS required participating facilities to ensure that their staff receive the COVID-19 vaccine as a condition of receiving Medicare or Medicaid payments. *Id.* at 61,559, 61,570. The CMS Mandate specified that "[r]equests for exemptions based on an applicable Federal law must

be documented and evaluated in accordance with applicable Federal law and each facility's policies and procedures." *Id.* at 61,572. Following the issuance of the CMS Mandate, Inova updated its exemption procedures and told its staff that it would be reevaluating exemption requests. FAC ¶¶ 29, 33. Accordingly, Inova told Hoffman on November 26, 2021, that she would need to reapply for an exemption.

Hoffman submitted a renewed exemption request on January 3, 2022, on both medical and religious grounds. FAC ¶ 33, Ex. 1. In the religious portion of her request, Hoffman stated that "[i]t would be dishonoring to God for me to put something into my body for which I had a conscientious objection." FAC Ex. 1 at 10. Inova denied her request on both grounds. FAC ¶¶ 34, 41.

Inova invited Hoffman to "submit additional information for consideration," and on April 10, 2022, she submitted a further written statement detailing her religious objections to the COVID-19 vaccine. FAC ¶ 42, Ex. 2. She stated that "God forbids" her taking the vaccine and that "His command for me to avoid the COVID-19 vaccinations is undeniable and I must obey it." Ex. 2 at 4. Hoffman also stated for the first time that she objected to the COVID-19 vaccines because of the "methods of utilizing aborted human fetal cell lines in the development or testing of these vaccines." *Id.* at 5. She believed that taking the vaccine would therefore "make [her] complicit with the practice of human sacrifice," which "is an inconceivable evil" to "God's plan." *Id.*

Inova denied Hoffman's religious exemption request again on May 12, 2022. FAC ¶ 45. Inova ultimately informed Hoffman that she would be banned from Inova facilities effective August 1, 2022. *Id.* ¶ 46. Hoffman alleges she "was terminated from her Inova job as of August 1, 2022," and had to relocate to "obtain somewhat comparable employment." *Id.* ¶¶ 47-48.

Hoffman brought six claims against Inova and NAPA: (1) Title VII failure to accommodate her religious beliefs; (2) Title VII disparate treatment; (3) VHRA religious discrimination; (4) ADA failure to accommodate; (5) ADA disability discrimination; and (6) VHRA disability discrimination. *See* ECF 1 ("Compl."). After Inova and NAPA moved to dismiss and the Court held oral argument, the Court dismissed the claims against NAPA because Hoffman failed to administratively exhaust any claims against it, and it dismissed the claims against Inova because Hoffman had not alleged that Inova was a joint employer for purposes of Title VII, the ADA, or the VHRA. ECF 26 ("Tr.") at 85:2-86:16. At Plaintiff's request, the Court permitted her to file an Amended Complaint. She now brings five claims against Inova under Title VII, the ADA, and the VHRA, alleging religious and disability discrimination. Inova has moved to dismiss again, and the motion is ripe for resolution.

## II.  ANALYSIS

Hoffman has failed to adequately allege in her amended complaint that Inova was her "employer" for purposes of Title VII, the ADA, and the VHRA. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). And to state a plausible claim, Plaintiff must allege "factual content" that is more than merely conclusory. *Id.* Hoffman has not alleged facts that would establish Inova was her joint employer with NAPA.

As she admits, Hoffman "was contractually an employee of NAPA … at all relevant times herein." FAC ¶ 9. She brings her claims against Inova, however, under the theory that Inova was her "joint employer." *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 414 (4th Cir. 2015). The Fourth Circuit has provided several factors that courts should consider in determining whether a

defendant is a "joint employer" for purposes of Title VII liability, but the "common-law element of control remains the 'principal guidepost' in the analysis." *Id.* Those factors are:

> (1) authority to hire and fire the individual;
>
> (2) day-to-day supervision of the individual, including employee discipline;
>
> (3) whether the putative employer furnishes the equipment used and the place of work;
>
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
>
> (5) the length of time during which the individual has worked for the putative employer;
>
> (6) whether the putative employer provides the individual with formal or informal training;
>
> (7) whether the individual's duties are akin to a regular employee's duties;
>
> (8) whether the individual is assigned solely to the putative employer; and
>
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* The Fourth Circuit has instructed that the first three factors are generally the most important. *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021).

Even when considering Hoffman's allegations in the light most favorable to her, these factors weigh against Inova qualifying as her "employer" for Title VII purposes.

Critically here, Hoffman has not plausibly alleged that Inova had the authority to hire and fire her. To be sure, Hoffman alleges that her "employment contract provided that she would be terminated for cause if Inova demanded that she be removed from providing services at its facility, or if she failed to abide by" Inova's policies. FAC ¶ 13. But her employment contract—with NAPA—plainly does not say that. Instead, it states that NAPA "may" terminate her employment (with NAPA) for cause "upon a facility's or other site's demand that [Hoffman] be removed from providing services at such facility or site." ECF 11-1 ¶ 7(V). That provision does not provide Inova with any authority to terminate Hoffman; the decision lies entirely in NAPA's discretion. Hoffman also alleges that her "ability to obtain approval to work in Inova facilities was a requirement of

5

being hired, and she could not be hired [by American Anesthesiology] without becoming credentialed by Inova." FAC ¶ 14. But assuming this allegation is true, any relevance has dissipated because after Hoffman was hired by American Anesthesiology, it was purchased by NAPA, and thereafter "Hoffman has been a contractual employee of NAPA." *Id.* ¶ 9. Put simply, Hoffman does not allege that her employment with NAPA was contingent on Inova's approval.

More broadly, Hoffman alleges that she was "banned from Inova facilities effective August 1, 2022," which she equates to being "terminated from her Inova job." FAC ¶¶ 46-47. The Amended Complaint is vague, however, as to the implications of Inova's decision, alleging only that she had to relocate to obtain somewhat comparable employment. FAC ¶ 48.[2] Courts have regularly found in similar circumstances that a decision to "ban[]" a contractor from facilities "is insufficient to show joint employment—even if that leaves the contractor out of work." *Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525, 544 (W.D. Va. 2021) (collecting cases). So too here: Inova's decision to restrict Hoffman's access to its facilities has no bearing on whether Inova had the authority to hire or fire her.

Hoffman argues instead that Inova had de facto authority to terminate Hoffman because American Anesthesiology "only contracts with Inova facilities, [so] her employment was 100% contingent on Inova's approval." ECF 37 ("Opp.") at 4 (citing FAC ¶ 14). But she admits that she "was contractually an employee of NAPA," and she makes no similar allegations that NAPA exclusively contracted with Inova facilities. FAC ¶ 9. Moreover, the practical consequences of Inova's decision, while perhaps relevant to NAPA's decision to terminate Hoffman, has no bearing on Inova's "*authority*" to make that decision, which is the relevant inquiry. *Butler*, 793 F.3d at 414.

---

[2] In her initial complaint, Hoffman alleged that NAPA terminated her about two months after Inova suspended her privileges. Compl. ¶ 36.

6

As to the second factor, Hoffman conclusorily alleges that Inova "exercised control over [her] delivery of her professional services," but she fails to provide any factual content as to who exercised this oversight and control and how. FAC ¶¶ 17. The only example Hoffman provides is that "Inova maintained control over whether [a] medication could be approved for [a] patient" because "Inova could deny use of a particular medication, or could set a policy for the conditions under which the medication could or could not be used." *Id.* ¶ 14. But regulations regarding patient care "relate to the professional standard for providing health care to patients for which both [CRNAs] and the Inova hospitals [have] professional responsibility to their patients …." *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 261-62 (4th Cir. 1997). And although Hoffman alleges that "Inova set and monitored [her] work schedule" (FAC ¶ 18), she refers vaguely to "Inova staff," without identifying who these staff are and whether they were Inova employees or, like herself, credentialed medical staff employed by other practice groups. Moreover, this allegation is contradicted by Inova's contract with American Anesthesiology, which provided that American Anesthesiology, not Inova, would assign staff to provide anesthesia services to cover the schedule and would timely notify Inova of any changes to that schedule. ECF 29-1 at 3.1.2.[3] On balance, this factor therefore weighs against finding Inova was Hoffman's "employer."

Inova concedes, as relevant to the third factor, that Hoffman worked at Inova facilities and that she used Inova equipment and supplies. FAC ¶ 19. But Hoffman admits that it was NAPA that assigned her to work at Inova facilities (FAC ¶¶ 9-11). And in the healthcare context, the use of hospital equipment and supplies is standard practice "in almost every case" and not particularly

---

[3] Hoffman argues that it is improper to consider this contract at the motion to dismiss stage and challenges the authenticity of the contract on the grounds that the version Inova has provided was heavily redacted. The Court finds, however, that the contract is integral to the complaint because it directly bears on the joint employer issue, which is a central underlying issue in Hoffman's claims. Hoffman provides no reason to question the authenticity of the contract other than the fact that certain portions have been redacted, which is insufficient.

7

probative of the hospital's control of a health care provider. *Cilecek*, 115 F.3d at 262. *Butler* acknowledged that the joint employment factors should be applied flexibly in the "specific industry context" and *Cilecek*, although addressing a different doctrine, teaches that less weight may be given to the location of the work performed in these circumstances. *Butler*, 793 F.3d at 414 (citing *Cilecek*, 115 F.3d at 260).

The remaining factors do not push Hoffman's claim into the realm of plausibility. Hoffman alleges that Inova retained records regarding her licensure, credentialing, and health information, but again, as a hospital, collecting this information is necessary to ensure appropriate patient care and is not that probative. FAC ¶ 20. Critically, Hoffman fails to allege that Inova maintained records that are relevant to the *Butler* analysis, such as her payroll, insurance, and taxes. Similarly, while Hoffman alleges that Inova provided her with training on "Inova's charting system, workplace diversity and harassment training[,] … patient privacy/HIPAA training[,] … [and] new equipment in the facility or new types of procedures that would be performed for patient care," these trainings largely encompass those Inova is obligated to provide under federal law or to ensure an appropriate standard of patient care. *Id.* ¶ 22. And while Hoffman alleges that she "performed many generalized patient care tasks that were commonly performed by Inova staff nurses," her allegations also make clear that as a CRNA, she had a specialized role that could not be fulfilled by Inova-employed nurses. *Id.* ¶ 23 (alleging that "much of her work was focused on tasks that were specific to providing anesthesia").

Hoffman emphasizes that she worked exclusively at Inova facilities for roughly five years. FAC ¶ 21. While this allegation is relevant to the fifth and eighth *Butler* factors, they "do[] not advance the analysis" because at all times she was "formally employed through" contractors. *Wallace v. Bd. Of Educ.*, 2017 WL 2361161, *4 (D. Md. 2017). In these circumstances, this fact

"provides little assistance in demonstrating whether [Inova] exerted any supervisory control over Plaintiff." *Id.*

When considering the *Butler* factors in the context here, and keeping in mind that the ultimate guidepost is the extent of "control" Inova had over Hoffman, she has not plausibly alleged that Inova was her joint employer for Title VII purposes. In dismissing the initial complaint, the Court noted Plaintiff's inability to cite any authority holding a hospital as a joint employer in similar circumstances, which are not uncommon in the healthcare industry. In her opposition, Hoffman provides one case, *Crump v. TCoombs & Assocs., LLC*, 2015 WL 5601885, *18-26 (E.D. Va. Sept. 22, 2015), which held on summary judgment that the Navy was the joint employer of a contracted physician assistant. The facts in that case, however, are meaningfully different than Hoffman's allegations, and they highlight what is lacking here. In *Crump*, the Navy had set qualifications for the plaintiff's position, reviewed her application, interviewed her, and approved her to work alongside others in identical roles who were directly employed by the Navy. *Id.* at *19. The Navy also retained the authority to report the plaintiff for misconduct to her employer, which her employer was generally required to follow, and therefore had "partial authority" to terminate her. *Id.* And it indisputably exerted day-to-day control over the plaintiff and could "unilaterally transfer" the plaintiff to other Navy facilities within a fifty-mile radius. *Id.* at *20. Hoffman has not alleged anything similar here demonstrating Inova's control over her employment. *Cf. Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998) (collecting cases holding that the "common law agency test" does not support finding that a healthcare provider's privileges at a hospital convert that hospital into the provider's employer).

Finally, because the ADA and the VHRA use an analogous definition of "employer" as that in Title VII, the Court's analysis extends to those claims as well. *See* Va. Code § 2.2-3905;

*Butler*, 793 F.3d at 406. Therefore, because Inova was not Hoffman's employer for Title VII purposes, it cannot be Hoffman's employer for purposes of the ADA or VHRA either.

Accordingly, it is hereby

**ORDERED** that Defendant's motion (ECF 28) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to close this civil action.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

May 7, 2024
Alexandria, Virginia